**LIFE TIME DOORS, INCORPORATED, Plaintiff-Appellant,**

v.

**WALLED LAKE DOOR COMPANY, Defendant-Appellee.**

No. 73–2201.

United States Court of Appeals, Sixth Circuit.

Nov. 15, 1974.

Allen M. Krass, Birmingham, Mich., for plaintiff-appellant.

William H. Griffith, Charles R. Rutherford, Whittemore, Huebert & Belknap, Detroit, Mich., for defendant-appellee.

Before PHILLIPS, Chief Judge, and WEICK and ENGEL, Circuit Judges.

WEICK, Circuit Judge.

Lifetime Doors, Inc. (Lifetime), a Delaware corporation, has appealed to this Court from an order of the District Court adjudging that the Gilbert U.S. Patent No. 3,168,763 on a "Solid Core Door" was invalid and not infringed by the door manufactured by Walled Lake Door Company (Walled Lake).

The patent in suit was issued on February 9, 1965 to Lifetime Door Co. of Mich., a corporation of Michigan, on an application filed by the inventor, William B. Gilbert, on February 9, 1962, which patent was assigned by him to the corporation. On January 20, 1969 Lifetime Door Co. of Mich. assigned the patent back to Gilbert, and he became the sole owner of the patent.

Shortly after the issue of the patent Gilbert filed a Reissue Patent Application in the Patent Office, seeking to obtain additional claims. The Examiner in the Patent Office rejected all of the claims in the Reissue Application, including the original claims allowed in the patent, on the ground that the claimed invention was not patentable in view of the prior art.

Gilbert then appealed to the Board of Patent Appeals, which sustained the final rejection by the Examiner on the ground that the additional claims as well as the original claims of the patent were not patentable in view of the prior art patents.

Gilbert did not exercise his rights to appeal therefrom, either to the Court of Customs and Patent Appeals or to the United States District Court for the District of Columbia. He abandoned the reissue patent and decided to stand on the original claims of his patent.

Complaint for infringement was then filed in the District Court for the Eastern District of Michigan, by Lifetime against Walled Lake. An Amended Complaint was filed adding Gilbert, the owner of the patent, as an additional plaintiff, and alleging that Lifetime had been granted an exclusive license. Extensive discovery was pursued. The case was tried before the District Judge; more than one hundred exhibits were offered, which included the prior art patents; expert witnesses testified for the parties.

The District Court considered the case carefully. It adopted 119 findings of fact and 13 conclusions of law, in holding that the patent was invalid and was not infringed. The Court made the

following finding as to the interest of Lifetime in the patent:

(2) Plaintiff, Lifetime Doors, Inc., which has an oral license under the patent in suit, is a Delaware corporation wholly owned by William P. Gilbert and sells wooden doors to the trade. The oral license is terminable at any time by Gilbert and does not bear a royalty.

The following notice of appeal was filed in the District Court:

Notice is hereby given that Lifetime Doors, Inc., Plaintiff above named, hereby appeals to the United States Court of Appeals for the Sixth Circuit from the Amended Judgment entered in this action on the first day of August 1973.

The notice of appeal was signed by the attorneys for the plaintiffs.

Walled Lake filed a motion to dismiss the appeal on the ground that Gilbert, the owner of the patent, had not appealed from the judgment of the District Court holding that the patent was invalid and not infringed. Walled Lake contends that a nonexclusive licensee is neither a necessary nor a proper party in an infringement action and therefore has no standing to appeal. We denied the motion to dismiss without prejudice to renewal.

Walled Lake has renewed its motion, and it is a threshold question which we must decide.

It is clear that Gilbert, the owner of the patent, has not appealed. It is too late for him now to appeal. The judgment is therefore res judicata as to Gilbert. The nonexclusive license is now without any force.

■ It has long been held that a nonexclusive licensee obtains no title to the patent and suit for infringement must be brought only in the name of the owner of the patent. Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891).

In Independent Wireless Tel. Co. v. Radio Corp. of America, 269 U.S. 459, 468, 46 S.Ct. 166, 169, 70 L.Ed. 357 (1926), the Court quoted the following language from Littlefield v. Perry, 21 Wall. 205, 22 L.Ed. 577 (1874):

A mere licensee cannot sue strangers who infringe. In such case redress is obtained through or in the name of the patentee or his assignee.

To the same effect is Contracting Div., A. C. Horn Corp. v. New York Life Ins. Co., 113 F.2d 864, 865 (2d Cir. 1940).

■ A mere licensee has no right even to be joined in a suit for infringement. Overman Cushion Tire Co. v. Goodyear Tire & Rubber Co., 59 F.2d 998 (2d Cir. 1932), cert. denied, 285 U.S. 545, 52 S.Ct. 395, 76 L.Ed. 937 (1932).

There was not an iota of evidence that Lifetime had an exclusive license, nor any evidence of the license terms and provisions. The only evidence is that it had an oral royalty-free license.

■ The burden of proof was upon Lifetime to establish that it had an exclusive license, and the terms and provisions of such license. It failed to meet its burden of proof.

Counsel for Lifetime filed an affidavit in response to the motion to dismiss the appeal in which he stated that he had been authorized to file the appeal in behalf of both Lifetime Doors and Gilbert. He further stated:

4. The failure to specifically denominate the Plaintiff Gilbert in the Notice of Appeal was the result of an error and it was the intent of myself, my secretary and my clients to file the Notice on behalf of Gilbert as well as Lifetime Doors, Inc.

It is difficult to understand why Lifetime Doors and not Gilbert was specifically named as giving Notice to Appeal.

Rule 3(c), Federal Rules of Appellate Procedure, specifically provides as to the content of the Notice of Appeal:

The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken.

The notice of appeal heretofore quoted strictly complied with the rule; the only trouble with it was that it did not specify Gilbert as one of the parties taking the appeal.

Since Gilbert was not named in the notice of appeal he simply did not appeal, and we have no jurisdiction over him.

The controlling case which is on "all fours" with the case at bar is Van Hoose v. Eidson, 450 F.2d 746, 747 (6th Cir. 1971). In that case we held:

> We are satisfied that the only appellant in this case is Floyd Van Hoose. Rule 3(c), Rules of Appellate Procedure, requires in part: "The notice of appeal shall specify the party or parties taking the appeal." The only party specified in the notice of appeal filed in this case was Floyd Van Hoose. The term "et al" does not inform any other party or any court as to which of the plaintiffs desire to appeal in this case. This is more than a clerical error. Cook and Sons Equipment, Inc. v. Killen, 277 F.2d 607 (9th Cir. 1960); Penwell v. Newland, 180 F.2d 551 (9th Cir. 1950); 9 Moore's Federal Practice (2nd Ed. 1970) Section 203.17.

It will be noted that we approved a decision to the same effect in Cook & Sons Equip., Inc. v. Killen, 277 F.2d 607 (9th Cir. 1960).

■ While we have jurisdiction over Lifetime, since its appeal was timely, it is clear that it has no standing to appeal because only Gilbert can complain of errors alleged to have been committed.

We think it advisable, however, for us to pass upon the merits of the case so that if the Supreme Court takes a different view on the jurisdiction issue it can pass upon the merits of the case without remand to us for that purpose.

### I

■ The solid core door covered by the patent in suit is made up of a plurality of parallel wooden blocks, called cores or slugs, of equal thickness and of varying lengths and widths, and trimmed to a rectangular form. Both surfaces of the slugs are covered with sheets of corrugated cardboard which sheets are adhered to the slugs by adhesives applied to each side of the slugs. The finished slugs are then placed within a rectangular wood door frame. The door frame has a thickness greater than the blocks used in the slug, but less than the thickness of the finished slug including both the blocks and the two sheets of cardboard. The specifications then provide:

> Two outer finishing sheets, preferably formed of plywood, are then laminated to the block under pressure so as to abut the surfaces of the frame and compress the slug on both sides. In this manner the plywood sheeting does not contact the blocks of the slug directly but rather only contacts the resilient cardboard. This not only prevents defects in the core from telegraphing through to the outer sheeting but also provides a door having superior sound insulation qualities as a result of the air space within the corrugated board.

> The unique construction provides a lower cost door than the conventional technique because of the savings associated with the use of a roughly finished core, as well as insuring a smooth outer finish.

The novelty claimed was the use of the corrugated sheets of cardboard over the wooden blocks. This would place a smooth surface underneath the plywood or outer panels of the door and take care of imperfections in the wooden blocks or in their arrangement, and prevent telegraphing through the door panel. The fact that the corrugated cardboard was compressible would allow for any expansion or contraction of the blocks occasioned by changes in the weather. The claims of the patent are set forth in footnote 1.

1. 1. A panel construction including:
   a hollow frame;

a core having outer dimensions complementary to the inner dimentions of the frame disposed within said frame,

The District Court found that each of the elements used in the Gilbert patent was old in the prior art and that the patent was in a crowded art. Patentability was claimed because of a novel combination of the old elements.

The District Court found fault with the patent specifications for their failure to describe the invention and the manner of making and using it in such clear and concise terms as would enable a person skilled in the art to make and use it, as required by 35 U.S.C. § 112.

Gilbert's patent contemplated eliminating or reducing telegraphing or the showing through of the wooden blocks forming the core, through the outer panels of the door. This was to be accomplished by placing the compressible sheets of cardboard between the door panels and the core. The specifications, however, limited it to making a pre-compressed core during the manufacture of the door. Once the cardboard has been compressed and glued to the core, the specifications do not indicate how any compressibility would remain. It was not necessary to compress the core in order to prevent telegraphing. All that was necessary to prevent telegraphing was the interposition of the cardboard between the door panels and the core.

The patent is completely silent as to whether the cardboard is resilient in the finished door, or indeed how resiliency could be accomplished after the gluing and the compressing.

said core being composed of a solid planar rectangular inner member having a thickness less than that of the frame, and a pair of compressible rectangular sheets fixed to the opposite faces of the inner member, said sheets having such uncompressed thickness sufficient to bring the total thickness of the core to a dimension which exceeds the thickness of the frame, and a pair of outer panels having outer dimensions similar to the frame abutting the faces of the frame and the core so as to compress the core.

2. The structure of claim 1, in which the core inner member is formed of a plurality of elongated rectangular lumber members having substantially uniform thickness and varying lengths disposed with their axes parallel to one another, the edges of said inner member being uniformly terminated so as to provide outer dimensions complementary to the dimensions of said frame.

3. A panel construction including: a hollow frame; a core having outer dimensions complementary to the inner dimensions of the frame disposed within said frame, said core being composed of a solid planar rectangular inner member formed of a plurality of elongated lumber sections having similar cross sections and varying lengths disposed with their axes parallel to one another and a pair of compressible sheets having outer dimensions complementary to the frame fixed to the faces of the inner member with adhesives so as to form a unitary core, said inner member having a thickness less than that of the frame and said compressible sheets having an uncompressed thickness sufficient to bring the total thickness of the core to a dimension which exceeds the thickness of the frame; and a pair of outer panels having outer dimensions similar to the frame abutting the faces of the frame and the core so as to compress the core.

4. A door panel including: a rectangular frame formed of a pair of elongated lumber stiles joined at their extreme ends by a pair of shorter lumber rails, the stiles and rails having a uniform thickness; a slug having outer dimensions which are complementary to the inner dimensions of the frame disposed within the frame, said slug being composed of a rectangular inner member formed of a plurality of elongated rectangular blocks having similar cross-sections and varying lengths disposed with their central axes parallel to one another, and having a thickness equal to the thickness of the blocks, such thickness being less than the thickness of the frame members, and a pair of corrugated rectangular cardboard sheets of the same outer dimensions as the inner member laminated to the opposed faces thereof, said sheets having such thickness that the total uncompressed slug thickness is greater than the thickness of the frame; and a pair of rectangular plywood panels having outer dimensions similar to the frame laminated to the two faces of the frame and slug in abutting relationship to the frame surfaces so as to compress the cardboard, whereby the plywood panels do not directly contact the inner member of the slug.

Moreover, the claims require the panels to compress the core without disclosing how this can be done.

The District Court agreed with the Board of Appeals that Claims 1 to 4, inclusive, were not patentable under 35 U.S.C. § 103, in view of Loetscher Patent 1,911,374 and Pick Patent 3,165,792, and that Claim 4 was invalid in view of Sprague Patent 1,943,701.

In Loetscher Patent 1,911,374 the layer covering the wood core was compressible in the completed door, the layer consisting of soft wood which was compressible.

Gilbert was not the first to solve the problem of preventing telegraphing in a finished door. The evidence disclosed that that problem was recognized and solved in various ways by Loetscher Patent 1,911,374, Pick Patent 3,165,792, Swedish Patent 114,548, German Patent 911,071, British Patents 466,892 and 473,773, and Belgian Patent 489,087.

The District Court found from the evidence that every element of Gilbert's combination functions in the same manner as in the prior art, with no new interaction between the elements and with no new result, and that everything in the entire combination was old and well known prior to Gilbert's invention.

The Court further found that any differences between the prior art and Gilbert were either equivalents or obvious.

The Court further found that the door manufactured and sold by Lifetime did not conform to the patent in suit.

The Court also found that Walled Lake's door was constructed in conformity with the prior art and does not infringe Gilbert's patent.

We are of the opinion that the findings of fact made by the District Court with respect to the comparison of the patent in suit with the prior art, with respect to the testimony of the expert witnesses, and with respect to infringement are all supported by substantial evidence and are not clearly erroneous. The Court's

interpretation of the patent specifications are correct.

The Court reached the correct conclusion in deciding that the patent in suit was invalid and was not infringed.

Affirmed.