**Clarence M. ADKINS and Other Named Plaintiffs, Plaintiffs–Appellants,**

v.

**UNITED MINE WORKERS OF AMERICA, Defendant–Appellee.**

No. 90–5379.

United States Court of Appeals, Sixth Circuit.

Jan. 28, 1991.

Decided July 18, 1991.

Rehearing and Rehearing En Banc Denied Oct. 4, 1991.

Leonard J. Stayton, for Clarence M. Adkins.

Paul S. Bamberger, James R. Hampton, Michael Holland, Edgar N. James, Judith A. Scott, Robert H. Stropp, for United Mine Workers of America.

Before KEITH and KRUPANSKY, Circuit Judges, and WELLFORD, Senior Circuit Judge.

WELLFORD, Senior Circuit Judge.

Clarence M. Adkins and 306 other miners in Kentucky[1] sued defendant Union[2] under § 301 of the Labor Management Relations Act in 1988. The plaintiffs asserted that they were "all former employees of either Leslie Coal Mining Company (Leslie) or McInnes Coal Mining Co. (McInnes)" and members of the defendant Union (UMWA), which was the "exclusive bargaining representative for employees of Leslie and McInnes."

The complaint recited that UMWA had filed suit in 1984 against a number of mining companies, including Leslie, McInnes, Sidney Coal Company (Sidney), and Robert Coal Company (Robert) in the same district court in which the suit at issue was filed, and that the suit was on behalf of "all individual members" of UMWA "adversely affected by alleged breach of contract and conspiracy by defendants in said [1984] complaint." Again, in the complaint at issue, plaintiffs asserted that UMWA obtained a $4,470,000 settlement in the 1984 lawsuit "to be distributed ... in the sole discretion of the Union." (Sidney was also to set aside coal reserves in and around the McInnes mine as a part of the settlement).

Plaintiffs claimed that UMWA caused the settlement to benefit only 245 of the men "adversely affected by the actions alleged in the lawsuit," and that these favored 245 men received cash, benefits, and hiring privileges through defendant Union's actions while plaintiffs received nothing. Plaintiffs contended that UMWA violated a duty to represent all Union members "without hostility, discrimination, arbitrariness or capriciousness"; in short, a "duty of fair representation," and also that the Union had acted in "bad faith."[3]

Plaintiffs averred that they were denied the right by the Union and its officers in conspiracy to attend Union meetings and to "assemble freely with other members" in violation of their rights and the Union constitution. The allegations included a claim that the defendant Union's actions "were an attempt to sidestep the collective bargaining agreement," and were done "willfully and/or maliciously." As a consequence, plaintiffs claimed damages, compensatory and punitive, and reimbursement of costs and other relief.

Defendant Union, after institution of discovery by plaintiffs, moved for summary judgment and for a protective order staying discovery pending resolution of the summary judgment motion, claiming that plaintiffs' interrogatories and production requests were "not pertinent to issues raised in the UMWA's dispositive motion" under Fed.R.Civ.P. 26(c).

The basis of defendant Union's "dispositive" motion was that plaintiffs had "no employment relationship ... and the Union had no collective bargaining relationship ... with any of these companies [A.J. Massey Coal Company and certain of its subsidiaries]." UMWA claimed in the summary judgment motion that plaintiffs were not "employees" to whom it owed a duty because they "had been laid off for two years prior to the union's dispute with Massey."[4] As a backup position, the Union claimed that it "acted reasonably and entirely consistent with its duty" in the settlement. The latter position seems clearly to put at issue the substance and merits of plaintiffs' basic claim. Affirmatively, as grounds of the Union's motion, it claimed that it "treated the [settlement] money as severance to those persons who had for nearly four years tried to regain an employment opportunity." Finally, the summary judgment motion asserted failure to exhaust internal Union grievance procedures.

In respect to the third position, it is obviously inconsistent with the UMWA's first

---

1. An amended complaint deleted the names of six original plaintiffs and added sixteen individual plaintiffs.

2. They also sued Richard Trumpka, President of UMWA, and Cecil E. Roberts, Vice President of UMWA, as well as John J. Banovic, Treasurer of UMWA. The individuals have been dismissed.

3. The complaint also made reference to a Union constitutional duty of faithful representation in enforcement of collective bargaining rights, and to "meet and assemble freely."

4. Neither A.J. Massey Coal Company (Massey) nor any alleged subsidiary company of Massey, as such, was mentioned in the complaint.

position that plaintiffs were owed no duty by the Union. Original defendant Cecil E. Roberts filed an unsworn "declaration" which was attached to the motion for summary judgment that he took responsibility for negotiating a settlement of the UMWA's "labor dispute" with Massey concerning some 19 mines in Kentucky and West Virginia. Roberts declared that UMWA authorized a strike "on October 1, 1984 at a number of Massey locations." Roberts declared that on or about that date he "learned that Massey had bought the Leslie and McInnes" mines, which had been shut down since February 1983. (Robert had purportedly operated Leslie and McInnes, and "had employed UMWA-represented employees").

Roberts' declaration (not to be confused with Robert Coal Company) claimed that when Robert purchased Leslie and McInnes, Massey announced it would operate these "non-union," and that "in response, the UMWA called on the former Robert employees who had previously worked at the Leslie/McInnes Mines to respond to the situation" and "strike against Massey." Roberts further declared, on behalf of the Union for which he served as vice president, that "former Robert employees who responded to the [Union's] call and engaged in the strike" were given strike benefits by UMWA.

Roberts' declaration also stated that "approximately 250 former Robert employees from the Leslie/McInnes Mines joined the strike," and the "other former Robert employees did not." The settlement finally ensued despite dismissal by the district court of Massey and "all the buyers of the Leslie/McInnes Mines." Roberts declared that it was a "Leslie/McInnes settlement" that brought about payment of the four plus million dollars and reopening of the McInnes Mine under a UMWA collective bargaining agreement and withdrawal of strike activity at the "former Leslie Mine." Roberts decided to pay "245 individuals who still remained in the UMWA Selective Strike Program" in the form of severance "and other benefits." He declared that

these 245 "retained their employment connection to the bargaining unit" and that plaintiffs "had left it," adding that plaintiffs were never employed by Massey, "the payor." Finally, Roberts declared that he found no charges by plaintiffs to the Union's International Executive Board about terms of the settlement as required by the Union constitution.

The magistrate, to whom the 1984 lawsuit in the UMWA case was referred, had found "Robert, Leslie, McInnes and Others" in the "Seller Group" of defendants and Sidney and A.J. Massey among the "Buyers Group." He found that Robert, who had signed a UMWA contract, operated Leslie and McInnes before their sale to a Massey subsidiary, Sidney, which refused to assume obligations under the UMWA agreement. (Leslie and McInnes were not "signatories" to the UMWA agreement). The prior UMWA suit involved whether there was substantial continuity between Robert, Leslie and McInnes, and Massey or its subsidiaries. The settlement agreement included UMWA's representation that it had authority to make the settlement "on behalf of the persons and entities referred to collectively as the Union."

On January 4, 1989, plaintiffs' counsel, after filing discovery motions, estimated six months to complete discovery after receiving an answer to the original discovery. Within a month, defendant filed its summary judgment motion and motion to limit or postpone discovery. In its motion, UMWA conceded that those asked to join the strike were "former Robert employees who had worked at the mines some twenty-one months earlier," and that "245 former Robert workers joined the strike." The Union claimed that only the latter were entitled to settlement benefits because they "endured the greatest hardship" and "manifested a continuing interest in regaining employment."

In response to the UMWA motion for summary judgment, seven plaintiffs[5] filed an affidavit contending that each was either a Leslie or McInnes employee ("as were all of the other Plaintiffs") and that

---

5. The seven are Hammond, Hensley, Varney, Bailey, Preece, Case, and Justice.

when laid off, all were UMWA members and remained so "at all relevant times." The affiants claim that they were advised by the local union president that they, and all other plaintiffs, "were being represented by the Union" in its 1984 lawsuit and that they were mailed a copy of a subsequent injunction order in 1985 pertinent to that suit. Affiants claim they did not see or hear Union advertisements about signing up "for the strike fund," but heard about it and "attempted to sign up" unsuccessfully. They claim that they expected to be recalled as part of the settlement because they were (as were other plaintiffs) "ready, willing and able to return to work." Affiants claimed to have called a UMWA official for assistance but were rejected and that both international and local Union officials refused to institute any grievance for them. They claim that after the settlement, the Union would not allow them to attend Union meetings or take part in Union activities pertaining to the settlement. Affiants claim that there is no UMWA constitutional provision providing for a grievance against the Union itself, and that any grievance would be futile in any event.

Unsworn responsive "declarations" to the seven plaintiffs' affidavits were filed by Union agents or officials indicating that Bailey was sent a certified letter in 1985 and that "he worked non-union during the strike"; that Varney transferred into another local union, and he also was sent a 1985 registered letter; that Hensley and Preece obtained fulltime employment; that Hammond worked at a non-union mine; that Case was disabled; and that Justice "went to work non-union during the strike," and had abandoned the strike and had a suit against UMWA dismissed for failure to exhaust internal union benefits.

The district court, in granting the Union summary judgment, held that although plaintiffs may not have been "employees" in the statutory sense, the Union owed plaintiffs a duty of fair representation. As to this ground of UMWA's motion limiting discovery, plaintiffs then have no complaint. Because plaintiffs were "unable to demonstrate" Union hostility or discriminatory conduct, however, UMWA was granted summary judgment. The district court held that both plaintiffs and the 245 strike settlement beneficiaries to have been "former co-workers," and thus in the same general class or category, and that "plaintiffs failed to respond to the Union's invitation to engage in the picketing," and made further findings on the same undisclosed basis, that some plaintiffs "gained other employment, . . . and some moved to other areas."

The district court made a decision, then, on the merits of plaintiffs' claim of lack of fair representation apparently based on unsworn statements by defendant lawyers and officials. It made no decision on the Union contention of failure to exhaust, or plaintiffs' claimed justification for not pursuing exhaustion further.

## JURISDICTION

■ The timely notice of appeal in this case was as follows:

CLARENCE M. ADKINS, ET AL,

PLAINTIFFS

V

UNITED MINE WORKERS OF AMERICA, ET AL,

DEFENDANTS

*NOTICE OF APPEAL*

Notice is hereby given that all of the Plaintiffs to this action as set out in the Complaint which has been filed herein as well as in all amendments thereto hereby appeal to the United States Court of Appeals for the Sixth Circuit from the Order entering summary judgment on behalf of the Defendants as filed on February 8, 1990 and with notice being given of the entry of the order on February 9, 1990 in this court.

J/A 33.

Defendant moved to dismiss for a jurisdictional defect in this notice based upon use of the words "et al" in the caption rather than listing all of the plaintiffs by name. This issue was recently addressed

by this court en banc in *Minority Employees of Tenn. Dep't of Employment Sec., Inc. v. State of Tennessee*, 901 F.2d 1327 (6th Cir.1990). The Supreme Court also recently has addressed this jurisdictional issue in *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988). We were almost evenly divided on a somewhat similar issue in *Minority Employees*, and it now behooves us to examine the facts in that case with those in the present case.

*Minority Employees* involved a first named entity, Minority Employees of the Tennessee Department of Employment Security, Inc. (Minority Employees), and several individual plaintiffs. After an adverse decision in the district court, a notice of appeal was filed designating as the appealing party an "appellant." Nowhere in the caption or body of the notice of appeal in *Minority Employees* was there an indication that more than one appellant, the group, was seeking to appeal. We held, therefore, that jurisdiction was lacking on appeal with respect to the individual plaintiffs. We, of course, have no quarrel with this holding, and have no intent whatever to avoid or ignore this decision of our entire court. The notice of appeal in this case, however, is materially different.

*Minority Employees* cited two earlier opinions of this court in reaching its majority decision. The first, *Van Hoose v. Eidson*, 450 F.2d 746 (6th Cir.1971), dealt with four plaintiffs who sued for relief against a school board, and a notice of appeal which simply indicated "Floyd Van Hoose, et al., Plaintiffs–Appellants v. William P. Eidson, et al." Nowhere was there indication in *Van Hoose* that other specified or defined individuals were joining Van Hoose in bringing the appeal. "The *only party specified* in the notice of appeal" was Van Hoose. *Id.* at 747 (emphasis added). We held, accordingly, that only Van Hoose was before us on appeal.

The second case upon which this court relied as authority in *Minority Employees* was *Lifetime Doors, Inc. v. Walled Lake Door Co.*, 505 F.2d 1165 (6th Cir.1974). The facts of the latter case are even far-

ther removed from the facts of the instant appeal. Lifetime Doors was the only original complainant; later, by amendment, Gilbert, an individual purported investor, was added in this patent dispute. The notice of appeal, after a decision for defendant, was:

> Notice is hereby given that Lifetime Doors, Inc. Plaintiff above named, hereby appeals to the United States Court of Appeals for the Sixth Circuit.

*Id.* at 1167. The notice was signed by counsel for both plaintiffs, who attempted to include Gilbert in the appeal unsuccessfully. "Since Gilbert was not named in the notice of appeal," we held that "he simply did not appeal," and we had no jurisdiction over Gilbert. *Id.* at 1168.

In *Torres*, 487 U.S. at 312, 108 S.Ct. at 2405, fifteen of sixteen named plaintiffs were included in the notice of appeal. Torres was omitted due to a clerical error. Because he was "never named or otherwise designated" in the notice of appeal, the Supreme Court held that there was no jurisdiction over Torres' appeal despite the "harsh result." *Id.* at 318, 108 S.Ct. at 2409. Not only was there a failure to name Torres in the notice of appeal, there was no notice or basis of constructive notice to alert defendant that Torres sought to challenge the district court decision. The instant notice of appeal, on the other hand, alerts defendant that "all of the Plaintiffs" to the action seek to appeal.

We have stated why we believe that none of the Sixth Circuit cases, nor *Torres*, require that we dismiss this appeal on jurisdictional grounds as to all plaintiffs but Adkins. While any plaintiff puts his appellate rights in jeopardy if he fails to include his name in the notice of appeal, in this instance we are persuaded that we have jurisdiction to consider the claims of the multiple plaintiffs. We have never previously dismissed an appeal on jurisdictional grounds where the body of the notice of appeal makes specific reference to *all of the plaintiffs* named in the complaint and amendment thereto. Of the cases cited by defendant or the dissent, none involve one, such as this, which designates appeal by *all* of the plaintiffs named in the complaint.

We are aware, however, that *Santos–Martinez v. Soto–Santiago*, 863 F.2d 174 (1st Cir.1988), reached a contrary result where, under confused circumstances, the only named plaintiffs in the notice of appeal had withdrawn, the court held that the expression, *"all* plaintiffs appeal," was insufficient to cover other plaintiffs who had not withdrawn. A later case, *Storage Technology Corp. v. U.S. District Court*, 934 F.2d 244 (10th Cir.1991), which involved an appeal from a bankruptcy court judgment by defendants, was decided based on Bankruptcy Rule 8001(a) held to have notice of appeal requirements "more strict than those of Fed.R.App.P. 3(c)." We feel these cases to be distinguishable, but, in any event, they are not persuasive on the facts here involved.

We stated in *Minority Employees*, 901 F.2d at 1335, moreover, "it would appear to us that there may be some departures from naming in the body of the notice that will not be found to be fatal." The notice of appeal in this case, contrary to the assertions of the dissent, do give notice that all dissatisfied remaining plaintiffs, adversely affected by the district court's judgment, appeal.[6]

We, therefore, conclude that we have jurisdiction over all plaintiffs who pursued the complaint in the district court to final judgment.

### DISCOVERY CUTOFF

■ We give deference generally to the decision of the district court with respect to reasonable limitation of discovery. *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir.), *cert. denied*, 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981). As noted heretofore, defendants filed a motion for summary judgment and a motion to limit discovery shortly after plaintiffs had initiated discovery requests. One of the bases for defendants' motion was its legal position that plaintiffs had "failed to exhaust internal union grievance procedures." J/A 169. The district court, in

granting the motion to limit and in granting defendants' summary judgment motion, never ruled on this legal contention. As indicated, a number of plaintiffs responded with an affidavit, which purported to relate to other plaintiffs in the same posture, to the effect that they were former Leslie or McInnes employees, "attempted to sign up" for union duty and benefits during the strike; were "ready, willing and able to return to work" in the mines in question; and sought union assistance unsuccessfully. They also claimed that pursuing a grievance would have been futile under the circumstances.

We believe, at least as far as the seven affiants were concerned, that the response by affidavit raised genuine factual issues, particularly as to any requirement of exhaustion of internal union grievance procedures. It was error to have limited discovery, then, on this basis urged by defendants.

■ Next, defendants argued in support of limiting discovery as a legal contention, that plaintiffs were not " 'employees' under Section 2(3) of the National Labor Relations Act ('NLRA')." J/A 169. Again, we are persuaded that, at least as to the affiants and others similarly situated among the named plaintiffs, there was a genuine issue of material fact as to whether plaintiffs, or at least some of them, were "employees" within the meaning of the NLRA. Again, it was error to preclude the opportunity for plaintiffs to show whether they were, in fact, "employees" under the Act, and thus owed a duty of fair representation by defendants.

We hold, under the circumstances, that the district court erred in limiting discovery and therefore inappropriately curtailed plaintiffs' ability to demonstrate that defendants displayed "hostility, discrimination, arbitrariness or capriciousness" in choosing 245 miners for settlement benefits and allegedly ignoring or passing over more than 300 other miners, plaintiffs herein, who claim to be similarly situated, for-

---

**6.** The majority in *Minority Employees* emphasized that "the use of the term 'plaintiffs' in the body of the notice failed to designate the indi-

vidual plaintiffs." *Id.* at 1322. Plaintiffs had failed there to designate *all* the plaintiffs. *See* the concurring opinion of Judge Guy.

mer employees at the same mines and/or under the same employers who were being struck. These plaintiffs also claimed that they were union members, or thought that they were being represented by defendants during the strike period.

## SUMMARY JUDGMENT

■ This court reviews de novo a district court's grant of summary judgment, "apply[ing] the same test as that used by the district court in reviewing a motion for summary judgment." *Berlin v. Michigan Bell Tel. Co.*, 858 F.2d 1154, 1161 (6th Cir.1988) *citing Hand v. Central Transport, Inc.*, 779 F.2d 8, 10 (6th Cir.1985). When considering a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the inference to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *see also 60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). However, the nonmoving party bears the responsibility to demonstrate that summary judgment is inappropriate under Rule 56(e).

A court may grant summary judgment only if there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). "The judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). However, " '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.' " *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989) (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512).

■ In order to assert a duty of fair representation claim, the plaintiffs must be employees to whom the union owes a duty. 29 U.S.C. section 152(3); *Vaca v. Sipes*, 386 U.S. 171, 207, 87 S.Ct. 903, 925, 17 L.Ed.2d 842 (1967). Plaintiffs also must prove that the union's conduct toward them in connection with a matter involving the negotiation or supervision of a collective bargaining agreement is "arbitrary, discriminatory or in bad faith." *Id.* at 207, 87 S.Ct. at 925.

■ In discussing the limitation of discovery, we have indicated that genuine issues of material fact were presented by plaintiffs, or at least some of them, as to whether they were "employees" and whether they should have been required to pursue internal union remedies, if any were available. In light of Roberts' declaration filed in the case, it was conceded that Robert had purchased Leslie and McInnes mines or assets and that Massey, the target of the strike, had ultimately bought the Leslie and McInnes mines and intended to operate them "non-union." Plaintiffs claimed to be former union employees at Leslie or McInnes. Defendant Roberts also "declared" that some former Robert employees joined the strike and picketed while others did not. He, therefore, excluded the latter from settlement benefits.

The key issue, then, on the question of a duty to represent fairly was whether plaintiffs, or any of them, actually declined to join the strike, or to perform picketing, and/or whether plaintiffs "left" the union during the relevant period.

Affiants claimed to have been laid off at McInnes or Leslie mines, and they claimed to have remained union members during the relevant period. They claimed to have "attempted to sign up," and were precluded from doing so by defendants, in substance. We are persuaded that under all the circumstances summary judgment was inappropriate and that at least carefully limited discovery should have been permitted in the areas where legal defenses were raised that may constitute a successful bar to plaintiffs' actions ("employee" status, union membership, and exhaustion of union administrative remedies).

We, therefore, REVERSE the award of summary judgment and REMAND for further proceedings consistent with this opinion.

KRUPANSKY, Circuit Judge, dissenting.

The panel majority's statement to the contrary, the notice of appeal in this case is substantively the same as the notice of appeal the en banc court of this circuit found insufficient in *Minority Employees of Tenn. Dep't of Employment Service, Inc. v. State of Tennessee,* 901 F.2d 1327 (6th Cir.1990) (en banc). The majority relies on language in the body of the notice of appeal to salvage the deficient caption. The body of the notice of appeal in *Minority Employees* read: "Now come plaintiffs in the above case and appeal...." *Minority Employees,* 901 F.2d at 1330. The body of the notice of appeal in this case reads: "Notice is hereby given that all of the Plaintiffs to this action as set out in *the Complaint which has been filed herein as well as in all amendments hereby appeal....*" In attempting to distinguish the instant case from *Minority Employees,* the majority relies entirely upon the word "all" and erroneously states that none of our previous cases dismissed an appeal when the body of the complaint made reference to "all" the plaintiffs named in the complaint or amendments thereto. The panel majority's rationalizes that the en banc court in *Minority Employees* dismissed the notice of appeal because "the plaintiffs" might have meant "some" of the plaintiffs, not "all" of the plaintiffs.

*Minority Employees* did not rest on such a slim reed. Only one plaintiff was specifically named in the caption, "Minority Employees of the Tennessee Department of Employment Security," a corporate plaintiff. The en banc court concluded that "the appellants *must include in the notice of appeal the name of each and every party taking the appeal.*" *Minority Employees,* 901 F.2d at 1330. Nothing could be more explicit. The court relied upon *Torres v. Oakland Scavanger Co.,* 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), which, contrary to the panel majority's implication, did not turn on the lack of "constructive notice," but rather upon the mandate of the *Torres* disposition, which reads:

> The failure to name a party in a notice of appeal is more than excusable "informality"; *it constitutes a failure of that party to appeal.*

The wisdom of the Supreme Court's pronouncements are demonstrated by the instant notice of appeal which provides "Notice is hereby given that all of the Plaintiffs to this action as *set out in the Complaint* which has been filed herein *as well as* in all amendments hereby appeal...."

Mindful of the above language, the record of the instant proceedings challenges the majority to determine with certitude the identity of the appellants not named in the notice of appeal who may be bound by an adverse judgment or who may be held liable for costs or sanctions in these proceedings when it is apparent on the face of that record that the named parties plaintiff in the initial complaint are *significantly different* from those identified in the amended complaint in that a *number of the named plaintiffs identified* in the *initial complaint voluntarily withdrew* from the action at some point in time before the amended complaint which joined additional parties plaintiff not named or identified in the initial complaint was filed.[1]

---

1. The panel majority misinterprets and misconceives *Storage Technology Corp. v. United States District Court for the District of Colorado,* 934 F.2d 244 (10th Cir.1991). In that case, the body of the notice of appeal in controversy identified appellants as "Comite Pro Rescate de la Salud, et al., *and all the Defendants of record herein.*" *Storage Technology,* 934 F.2d at 245 (emphasis added). The Tenth Circuit concluded that the notice was inadequate and did not embrace any appellant beyond the appellant actually named therein:

In *Laidley v. McClain,* 914 F.2d 1386, 1389 (10th Cir.1990), we held that "the failure to specifically designate a party somewhere in the notice of appeal is a jurisdictional bar to that party's appeal." We rejected the use of "'plaintiffs hereby appeal,' when combined with an 'et al.' designation of some of the plaintiffs" as subject to the interpretation either that all of the plaintiffs intended to appeal or that less than all plaintiffs intended to be appellants. *Id.* Likewise, in *Pratt v. Petroleum Production,* 920 F.2d [651] at 654, [10th

The dissent in *Minority Employees* advanced essentially the same reasoning adopted by this panel's majority and argued that the word "plaintiffs" in the body of the otherwise unspecific notice of appeal gave sufficient notice of the parties appealing. *Minority Employees*, 901 F.2d at 1341–48 (Nelson, J., dissenting). Although the argument was rejected by the en banc court in *Minority Employees*, the panel majority now seeks to evade this circuit's en banc pronouncements by erroneously reasoning that "all the plaintiffs" is the same as "the appellants *must* include in its notice of appeal *the name of each* and *every party* taking the appeal." Thus, in the process of embracing the dissent, the panel majority has elevated the redundancy of the word "all" to a principle of appellate jurisdiction.

In *Minority Employees*, the en banc court admonished against the use of nice semantic distinctions to avoid the mandate of Fed.R.App.P. 3(c) and *Torres* when it rejected the holding of *Ford v. Nicks*, 866 F.2d 865 (6th Cir.1989). In *Ford*, the panel had concluded that a notice of appeal captioned, in part, "Chancellor Roy S. Nicks, et al. Defendants" sufficiently designated the appellants. *Ford*, 866 F.2d at 869. According to the *Ford* panel of this court, because of the lack of articles in Latin, "et al." could mean "and others" or "and the others," depending upon the context within which it was used. Accordingly, the *Ford* panel reasoned that since "the" appeared in the body of the caption, the notice of appeal conveyed the intention of "all" "the" eighteen defendants to appeal. *Ford*, 866 F.2d at 869. In rejecting this reasoning, the en banc court stated that even if the *Ford* approach was consistent with *Torres*, "we cannot permit our jurisdiction to turn on the presence or absence of the definite article." *Minority Employees*, 901 F.2d at 1333.

As both *Torres* and *Minority Employees* recognized, the purpose of the notice of

Cir.1990] we held the phrase "defendants above named hereby appeal" in conjunction with an "et al." to be insufficient to meet the specificity requirements of Fed.R.App.P. 3(c) and *Torres*.

We relied in *Pratt*, as we had in *Laidley*, on *Minority Employees of Tennessee Department of Employment Securities, Inc. v. Tennessee Department of Employment Securities*, 901 F.2d 1327, 1360 (6th Cir.) (en banc), *cert. denied*, — U.S. —, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990) (name of each and every party taking appeal must be included in notice of appeal) and *Rosario–Torres v. Hernandez–Colon*, 889 F.2d 314, 317 (1st Cir.1989) (en banc) (court lacked jurisdiction over appeals sponsored by would-be appellants not specified in timely notice of appeal).

*Storage Technology*, 934 F.2d at 247–48. The language of the Tenth Circuit, citing to this Circuit's disposition of *Minority Employees*, accordingly belies the panel majority's analysis of *Storage Technology*.

In *Santos–Martinez v. Soto–Santiago*, 863 F.2d 174 (1st Cir.1988), the text of the notice of appeal identified appellants as follows: "*All* plaintiffs appeal to the First Circuit Court of Appeals the Opinion and Order of November 30, 1987." *Santos–Martinez*, 863 F.2d at 175 (emphasis added). In *Santos–Martinez*, as in the instant case, a number of the named parties identified in the initial complaint voluntarily withdrew from the action at some point in time before the notice of appeal was filed.

In addressing the adequacy of the notice of appeal, the First Circuit noted:

In their supplementary brief, appellants argue that their case is distinguished from *Torres* by the statement in the notice of appeal that "*All* plaintiffs appeal...." (Emphasis added.) But most of the Supreme Court's reasoning for rejecting the "et al." designation applies equally in the circumstances of this case to the words, "All plaintiffs." *Santos–Martinez*, 863 F.2d at 176.

In disposing of the appeal, the First Circuit concluded:

That the appellees and the court might, by further inquiry, eventually ascertain the identity of the actual appellants is not enough, as the *Torres* Court has indicated in its near-unanimous decision. Appellants must comply with the language of Rule 3(c)—that is, they must "specify the party or parties taking the appeal." It does not suffice that the actual appellants are now known and that no harm may have been done by reason of the insufficient notice of appeal. Because Rule 3(c) is jurisdictional, the Supreme Court has stated that "harmless error" analysis is inapplicable to a defect in the notice of appeal: "a litigant's failure to clear a jurisdictional hurdle can never be 'harmless' or waived by a court." *Torres*, 108 S.Ct. at 2409 n. 3. *See also Hays v. Sony Corp. of America*, 847 F.2d 412, 420 (7th Cir.1988) (noting that under *Torres* the failure to name an appellant in a notice of appeal necessitates dismissal of the appeal, even if the appellee was not misled).

*Santos–Martinez*, 863 F.2d at 177 (footnote omitted).

appeal is to identify the appellants for the opposing party and the court. This notice requirement is "jurisdictional and mandatory." *Torres*, 108 S.Ct. at 2408 (quotations omitted). Jurisdiction can not turn on a panel's ingenuity in creating artificial constructs of language, and a panel may not withhold the sometimes harsh application of this rule simply because a particular case has merit. Such judicial action defeats the basic purpose of our procedural rules: to secure "a fair and orderly process." *Torres*, 108 S.Ct. at 2410 (Scalia, J., dissenting). Only an even-handed enforcement of the terms of Fed.R.App.P. 3(c) will preserve a fair and orderly process for "all" litigants. It appears that the majority opinion has successfully created confusion from the order which resulted from the *en banc* resolution of *Minority Employees*.

The bench, the federal bar, and the public have a right to know what the precedent in this circuit dictates as to this jurisdictional issue of importance. Must the notice of appeal include *"the name of each and every party taking the appeal"* as mandated by the en banc decision of this circuit in *Minority Employees* or is that decision now superceded by this panel's majority opinion in the instant case which advises that *the name of each and every party taking the appeal need not be included in the notice of appeal* so long as the notice of appeal states that "notice is hereby given that all the Plaintiffs to this action ... hereby appeal."

A review of the remaining issues as they relate to the single remaining plaintiff who was actually named in the notice of appeal, discloses that the district court did not abuse its discretion in staying discovery pending the disposition of the summary judgment motion. Prior to ruling on the motion, the court afforded the plaintiff an opportunity to explain the relevancy of his interrogatories and document production requests to the subject matter of the motion for summary judgment. The plaintiffs failed to do so and responded with the conclusory statement that the discovery was "clearly relevant."

Considering the district court's disposition of the summary judgment motion, wherein it found no evidence of a breach of duty of fair representation as it related to the sole remaining plaintiff, and according the sole remaining plaintiff the benefit of all the evidence submitted in opposition to the summary judgment motion, together with every favorable inference that may have been drawn from all the evidence presented, the district court's judgment was clearly correct. The plaintiff simply has not joined issues of fact that would prove that the union, by distributing the small strike settlement among the union employees who actually engaged in the four-year picket, intentionally discriminated against him. I must accordingly respectfully dissent and would affirm the district court.