THOMAS MURPHY, Plaintiff-Appellant, *v.* CHESTNUT MOUNTAIN LODGE, INC., Defendant-Appellee.

First District (5th Division)   No. 83—1298

Opinion filed May 25, 1984.

Ambrose & Cushing, P.C., of Chicago (F. John Cushing III, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (David C. McLauchlan, Hugh C. Griffin, and William D. Frazier, of counsel), for appellee.

JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff, in a two-count complaint, sought damages for personal injuries sustained while skiing at defendant's lodge (the Lodge). The trial court directed a verdict on the negligence count at the close of all the evidence, and the jury then found for defendant on the strict liability count. On appeal, he contends that the directed verdict was improperly entered, and that error in the admission of certain testimony by defendant's expert witness entitled him to a new trial on the strict liability count.

■■ Before addressing the merits of plaintiff's contentions, we consider defendant's assertion that plaintiff's failure to present a complete report of proceedings requires summary affirmance of the judgment of the trial court. As defendant correctly states, it is incumbent upon the appellant, as the party claiming error, to furnish a record which, in accordance with Supreme Court Rule 323(a) presents "all the evidence pertinent to the issues on appeal" (73 Ill. 2d R. 323(a)) and sufficiently preserves for review all matters necessary for a disposition thereof (*LaPlaca v. Gilbert & Wolf, Inc.* (1976), 37 Ill. App. 3d 259, 345 N.E.2d 774). Where resolution of the issues depends on facts adduced at trial, statements in the appellant's brief as to evidence received cannot serve as a substitute for a report of proceedings (*Lakeland Property Owners Association v. Larson* (1984), 121 Ill. App. 3d 805, 459 N.E.2d 1164), and any doubts arising from the inadequacy of the record will be resolved against the appellant (*Teitelbaum v. Reliable Welding Co.* (1982), 106 Ill. App. 3d 651, 435 N.E.2d 852) because, absent record evidence to the contrary, we must assume that the trial court acted in conformity with the law and that it had before it facts which were supportive of its order (*Lakeland Property*

*Owners Association v. Larson* (1984), 121 Ill. App. 3d 805, 459 N.E.2d 1164; *Interstate Printing Co. v. Callahan* (1974), 18 Ill. App. 3d 930, 310 N.E.2d 786).

Here, although the transcript of proceedings presented only the testimony of the parties' two expert witnesses, it is plaintiff's position that their testimony sufficiently established a factual question as to defendant's negligence in renting skis to him without antifriction devices.

Plaintiff's expert witness, Jasper Shealy, Ph.D., a professor of safety engineering and consultant to the ski industry, testified that an antifriction device is a safety feature intended to reduce friction between the ski boot and the ski, allowing the bindings to release when an excessive amount of force is exerted upon the ski thereby reducing the risk of torsional injuries to the skier's legs in a twisting fall. He stated that by late 1973 or early 1974, it was an industry-accepted practice for manufacturers of ski equipment to incorporate antifriction devices into the binding systems, the most effective being a teflon pad, and he estimated that by 1975, approximately 50% of the skiing population was using some type of antifriction device. After reviewing plaintiff's testimony and medical records and examining plaintiff's photographic exhibits Nos. 1, 2, 3 and 4 of Tyrolia Model 120 ski equipment, Shealy concluded that plaintiff's injury was caused by torsion applied to the leg as a result of an excessive friction buildup between the ski and the boot created by the lack of an antifriction device; that the ski equipment depicted in those photographs was unreasonably dangerous because it lacked such antifriction devices; and that in his opinion it was this condition which caused plaintiff's injury. Shealy acknowledged, however, that he had not examined and had no independent knowledge concerning the ski equipment actually worn by plaintiff during the accident; that Tyrolia was an established and respected manufacturer of ski equipment; that he never personally tested the Tyrolia Model 120 bindings to determine under what conditions they would or would not release; that if, by falling sideways, the skier's leg or boot struck the ground before the bindings did, or if the skier became airborne and landed straight down on his legs, even skis with an effective antifriction device might not release; and that it was possible, though unlikely, that the type of fracture suffered by plaintiff could have resulted from that type of compression fall.

Defendant's expert witness, John Perryman, a mechanical engineer with his own consulting firm, testified that the 1974-75 ski season was a period of transition in the ski industry, and although nu-

merous types of antifriction devices, which he described, were being developed, he had tested several and found that such devices were either not feasible or were simply ineffective. Teflon was one of the best materials, but was effective only when used in conjunction with boots which had a flat, smooth bottom surface, which was not indicative of the standard type boot available at that time. Polyurethane pads were also effective if they were properly located on the skis and were kept clean. Relying on information given him as to how plaintiff fell as well as X rays of the fractures he sustained, Perryman opined that the nature of the fall, *i.e.*, the striking of a mogul or dip followed by a somersault, was such that the injury would have occurred regardless of the type of bindings on the skis. He described the injury as a spiral fracture occurring as a result of a combination of torsional and compressive forces occurring as plaintiff's body twisted over his left leg. He too viewed plaintiff's photograph exhibits Nos. 1 through 4 and concluded that the ski equipment pictured therein, which contained a polyurethane plastic pad, was not unreasonably dangerous. Perryman also acknowledged that he had never seen nor tested the ski equipment involved in plaintiff's accident.

Turning then to a consideration of the question of whether the verdict was properly directed, we initially note that defendant correctly states the standard enunciated in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, that a verdict should only be directed where all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand.

It is noted also that the mere occurrence of an accident, standing alone, cannot support an inference of negligence (*Silverman v. General Motors Corp.* (1981), 99 Ill. App. 3d 593, 425 N.E.2d 1099), and liability cannot be predicated on surmise or conjecture as to the cause of the injury (*Potter v. Edgar* (1975), 34 Ill. App. 3d 33, 339 N.E.2d 321); rather, in an action sounding in negligence, the burden is on the plaintiff to establish the existence of a duty of reasonable care owed to him by defendant; a breach of that duty, *i.e.*, a negligent act or omission, and an injury proximately resulting therefrom (*Konicki v. Village of Hinsdale* (1981), 100 Ill. App. 3d 560, 427 N.E.2d 325). To establish proximate cause, plaintiff must demonstrate with reasonable certainty that defendant's negligent acts or omissions caused the injury for which he seeks recovery; otherwise, plaintiff has not sustained his burden of setting out a *prima facie* case of negligence, and it is therefore proper for the trial court to direct the verdict in favor of defendant. *Potter v. Edgar* (1975), 34 Ill. App. 3d 33,

339 N.E.2d 321.

■ In the case before us there was no testimony by either of the expert witnesses nor does the record otherwise disclose that the skis used by plaintiff were lacking antifriction devices. While both expert witnesses were shown photographs of skis, neither gave any testimony that they were of the skis used by plaintiff or even of comparable skis. It thus appears that plaintiff's expert witness established only that the skis in the photographs had no antifriction devices but, in the absence of any testimony from either expert that the skis used by plaintiff did not have such devices, it is clear that a factual question was not presented in that regard and, for that reason, a verdict was properly directed on the negligence count.

■ However, although not mentioned by plaintiff, our search of the record reveals that defendant filed a memorandum in opposition to plaintiff's post-trial motion wherein it summarized the trial proceedings, including the testimony of witnesses who appeared for both parties. Supreme Court Rule 321 provides that "[t]he trial court record includes any report of proceedings *** and every other document filed ***. There is no distinction between the common law record and the report of proceedings for purposes of determining what is properly before the reviewing court." (87 Ill. 2d R. 321.) Thus, to the extent that the testimony summaries presented in defendant's memorandum and the statement of fact in plaintiff's brief are not inconsistent, we will accept and consider for purposes of review the facts set forth therein. See *Van Walsen v. Blumenstock* (1978), 66 Ill. App. 3d 245, 383 N.E.2d 776; *Kahn v. Deerpark Investment Co.* (1969), 115 Ill. App. 2d 121, 253 N.E.2d 121.

It appears from defendant's memorandum that plaintiff testified to being on a three-day vacation in 1975 at the Lodge where he rented ski equipment consisting of a pair of skis to which the boots and bindings were already attached and a set of poles. Although he informed the Lodge's rental agent that he had never skied before, he received no instructions regarding maintenance of the skis or adjustment of the bindings. On each of the next two days, throughout which the skis remained in his possession, he took a ski lesson before spending several hours on the "bunny"—or beginner's—hill, but on the third day, after skiing on the bunny hill for awhile, he joined his wife and friends on the intermediate slope and completed one successful run downhill. On his second attempt, however, he struck a mogul or a dip; he lost control of the skis, causing him to somersault, and he landed on his left leg sustaining multiple fractures thereto. His testimony that the skis did not release from the bindings during the fall

was corroborated by a companion.

Other persons whose testimony was summarized in defendant's memorandum were Dorothea Moser, manager of the Lodge; David Kiefer, who was in charge of the maintenance of its ski equipment; and Captain James Longanecker, a member of the National Ski Patrol. Moser stated that plaintiff's three-day package vacation included at least one ski lesson per day and that the bunny slope was the only trail recommended for beginning skiers. She identified a standard ticket, given to all rental customers, containing a warning that ski bindings would not release in all types of falls and advising skiers to return to the rental shop if the skis were not adjusted satisfactorily. Kiefer testified that he was responsible for the maintenance of ski equipment at the shop; that all the skis were preadjusted according to the industry standards for weight and ability of the skier; and that all bindings were visually checked for proper adjustment at the time of rental. He was shown a photograph of ski equipment which he stated was of the type rented at the Lodge during the 1975 ski season and also identified antifriction devices thereon. Longanecker, who rescued plaintiff, testified that it was his custom and practice to test ski equipment immediately after an accident and record his findings in a report; that he did so after plaintiff's accident and, finding that the equipment was in good condition, he returned it to the Lodge rental shop.

By way of an evidence deposition, plaintiff's treating physician, Dr. Alvina Sabanas, testified that plaintiff sustained both comminuted and spiral fractures to the lower left leg, indicative of a complex accident involving multiple forces exerted upon the leg from different directions. In her opinion, this was an unusual injury in which there was a "pushing together and twisting of the bones."

■ We have considered this additional summarized testimony, and we note that although plaintiff and his companion both testified that plaintiff's skis did not release from their bindings during his fall, neither testified, nor did any other witness, that those skis did not have antifriction devices. The skis in question were not produced, and while plaintiff's expert witness viewed photographs of skis marked as plaintiff's exhibits Nos. 1, 2, 3 and 4 and testified that the equipment pictured therein did not have such devices, he also acknowledged that he had never seen nor examined the skis used by plaintiff, and neither he nor any other witness testified that the skis in the photographs were those involved in the accident or that they were even comparable thereto. While defendant's summary of Kiefer's testimony discloses that he was shown a photograph of skis, which he testified were of

the type rented by the Lodge during the 1975 ski season, there is nothing in his testimony to indicate that the photograph shown to him was one of those examined by the expert witnesses. Thus, there being no showing in the additional testimony that the skis used by plaintiff lacked antifriction devices, we will not alter our conclusion that the directed verdict as to negligence was properly entered.

■ Plaintiff also contends that he was prejudiced when the trial court improperly allowed defendant's expert witness to testify to the state of the art concerning antifriction devices at the time of the accident, and that the failure to exclude that testimony was reversible error requiring a new trial on the strict liability count. While it is true that the state of the art is not a defense to strict liability (*Cunningham v. MacNeal Memorial Hospital* (1970), 47 Ill. 2d 443, 266 N.E.2d 897), evidence of the existence of feasible alternative designs is relevant and admissible in actions predicated on strict liability (*Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859; *Seward v. Griffin* (1983), 116 Ill. App. 3d 749, 452 N.E.2d 558; *Sutkowski v. Universal Marion Corp.* (1972), 5 Ill. App. 3d 313, 281 N.E.2d 749), as well as those sounding in negligence (*Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859; *Gelsumino v. E. W. Bliss Co.* (1973), 10 Ill. App. 3d 604, 295 N.E.2d 110; *Sutkowski v. Universal Marion Corp.* (1972), 5 Ill. App. 3d 313, 281 N.E.2d 749). In *Sutkowski,* the court stated that "feasibility includes not only the elements of economy, effectiveness and practicality but also the technological possibilities viewed in the present state of the art" as shown by the opinions of experts or by the existence of safety devices on other products. (5 Ill. App. 3d 313, 319, 281 N.E.2d 749, 753; see *Kerns v. Engelke* (1979), 76 Ill. 2d 154, 163, 390 N.E.2d 859, 863.) To suggest, as plaintiff's argument seems to, that a plaintiff should be allowed to produce evidence of the existence or feasibility of safer designs to support his allegations that the product in question is unreasonably dangerous but that the defendant is not entitled to introduce rebuttal evidence thereon, amounts to a misinterpretation of the law in Illinois. See *Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, 396 N.E.2d 534; *Hubbard v. McDonough Power Equipment, Inc.* (1980), 83 Ill. App. 3d 272, 404 N.E.2d 311.

■ Here, plaintiff's expert testified at length as to the availability and feasibility of various antifriction devices during the early and mid-1970's and also referred to numerous studies he and others had conducted for various medical, industry and governmental safety organizations and to articles that had been published in trade and safety association journals delineating minimum safety standards in ski

equipment. Thus, we find no error in the admission of testimony by defendant's expert as to the ineffectiveness of devices on the market at that time.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

MEJDA, P.J., and LORENZ, J., concur.