Craig **FRANCIS**, Plaintiff–Appellant,

v.

**CLARK EQUIPMENT COMPANY**, Defendant–Appellee.

No. 92–3318.

United States Court of Appeals, Sixth Circuit.

Argued March 15, 1993.

Decided April 29, 1993.

547

Michael Garth Moore, Columbus, OH (argued and briefed), for plaintiff-appellant.

James K. Reuss, Lane, Alton & Horst, Columbus, OH (argued and briefed), for defendant-appellee.

Before: NELSON, Circuit Judge; and PECK and CONTIE, Senior Circuit Judges.

CONTIE, Senior Circuit Judge.

Plaintiff-appellant,[1] Craig Francis, appeals the district court's grant of summary judgment to defendant-appellee, Clark Equipment Company ("Clark"), in this products

---

1. The notice of appeal designated as an "appellant" only Craig Francis. Jurisdiction is lacking over the purported appeal of Lisa Francis because the notice failed to name her. The phrase "et al." in the notice of appeal is insufficient to designate Lisa Francis as an appellant. *Minority Employees v. Tennessee Dept. of Employment Sec.,* 901 F.2d 1327, 1331 (6th Cir.), *cert. denied,* 498 U.S. 878, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990).

liability action for injuries sustained by plaintiff Francis during the operation of a forklift manufactured by defendant Clark.

## I.

Plaintiff Craig Francis seeks to recover from defendant Clark for injuries he sustained on December 4, 1983, when a C500 55 forklift, manufactured by defendant Clark in 1976, overturned. Plaintiff Francis was working the swing shift at the Corning Glass Plant in Greenville, Ohio. His responsibilities included crushing glass, handling crushed glass with a pay loader, and operating a forklift. On the night of the accident, plaintiff noticed that the forklift's service brakes were not working properly. He drove the forklift up a ramp to a guard station, intending to proceed to the maintenance shop to seek repairs to the brakes. The guard told plaintiff that the maintenance serviceman, Donald Emerick, had gone home for the night. Plaintiff then turned the forklift around and drove the forklift down an outdoor ramp to the basement of the plant. While on the ramp, plaintiff lost control. The lift truck swerved from the right to the left side of the ramp, made an 180–degree turn to the left, and overturned on its left side. Plaintiff fell out of his seat, and the overhead guard of the truck struck him on his right leg, just above the ankle, nearly severing his foot.

On March 2, 1989, plaintiff filed a complaint in the United States District Court for the Southern District of Ohio. Because defendant was an out-of-state corporation and plaintiff was a resident of Ohio, diversity jurisdiction was proper under 28 U.S.C. § 1332. Trial to a jury before a magistrate commenced on January 8, 1990, on the claim of strict liability in tort.[2] Plaintiff asserted two claims in strict liability under Ohio law: (1) that, in the absence of operator restraints, the lift truck, which was subject to lateral overturns, was more dangerous than the ordinary user would expect (the "consumer expectation" theory), and (2) that the forklift's

design risks outweighed its utility (the risk-benefit theory).

Midway through the first trial, plaintiff was allowed to abandon the risk-benefit theory of liability after presenting evidence in support of such a theory. Defendant was precluded from cross-examining plaintiff's expert witness, George Bombyk, about his risk-benefit testimony and was not allowed to present rebuttal evidence relating to a risk-benefit theory of liability.

After a six day trial, the jury returned a verdict in favor of plaintiff for $394,000.

Defendant filed post-trial motions for judgment notwithstanding the verdict (JNOV) or for a new trial. On March 13, 1991, the trial court granted defendant's motion for a new trial, but denied its motion for JNOV.

The second trial (Francis II) began on February 24, 1992. At the conclusion of the direct examination of plaintiff's expert witness, Mr. Bombyk, counsel for defendant Clark made a motion under newly amended Federal Rules of Civil Procedure, Rule 50(a) for judgment as a matter of law. Without allowing plaintiff to proffer additional evidence on issues he considered relevant, the magistrate summarily granted defendant's motion. Plaintiff filed a timely appeal.

## II.

In the present case, the magistrate granted defendant's motion for a new trial at the conclusion of Francis I, because he believed he erred to the prejudice of defendant by allowing plaintiff to present and then abandon a claim of strict liability under the risk-benefit standard, while precluding defense counsel from presenting any evidence in rebuttal to the risk-benefit claim which had been presented by plaintiff to the jury.

The magistrate stated in his opinion that during trial he had prevented defense counsel from cross-examining Mr. Bombyk, plaintiff's expert witness, on his extensive testimony relating to the risk-benefit issue, because he believed the risk-benefit claim was no longer relevant after plaintiff decided to

2. Hereinafter, this trial will be referred to as Francis I to distinguish it from the second trial

that was held on February 24, 1992 (Francis II).

abandon it. However, after reviewing the transcripts of the trial, the magistrate believed he had erred to the prejudice of defendant because he had permitted the jury to hear an abundance of evidence which went to plaintiff's claim under the risk-benefit theory, but had precluded the jury from the opportunity to hear rebuttal evidence.

On appeal, plaintiff challenges the magistrate's version of Francis I and contends that (1) plaintiff's expert witness, Bombyk, did not testify at great length on matters relating to the risk-benefit issue, (2) that the magistrate's statement that the jury was exposed to extensive technical and opinion testimony related to the risk-benefit theory finds no support in the record,[3] and (3) that the jury had sufficient opportunity to hear evidence which contradicted plaintiff's evidence on the risk-benefit theory. Plaintiff concludes that defendant cannot point to a single significant line of inquiry that was precluded and that the evidence flatly refutes the magistrate's claim of prejudice. We disagree.

A careful review of the record reveals the following. Plaintiff opened his case-in-chief by reading into evidence the depositions of five former employees of defendant Clark—Gawlak, Hastings, Schell, Palen and Entwisle—taken in other cases. The excerpts addressed both the issue of lateral turnover in forklift accidents as well as the existence in the 1960s and 1970s of studies and informal determinations regarding the feasibility of forklift operator restraint systems pertaining to a risk-benefit theory of liability.

Plaintiff then called Mr. George Bombyk as his expert witness. Bombyk testified in his capacity as safety director for various corporations about hazard analysis and accident prevention, postulating his theory that any time a manufacturer can eliminate the risk of a hazard through feasible and economic means through design or safeguarding, it should be undertaken. He stated as an expert in the design of safeguarding systems for machinery and equipment that he had studied the technical publications on this

issue for years. He then testified about the technical literature which he said stated that there were enough injuries and fatal accidents to forklift drivers from lateral overturns to indicate that seat belts should be used as operator restraints. He also discussed the reasonable foreseeability of lateral overturn accidents, and the availability of patents for operator restraints to prevent injury in the event of a lateral overturn. He also testified that in his opinion, based on safety engineering probability, it would have been economically feasible to affix a wing-seat, seat-belt system to the design of the C500 55 Clark forklift in 1976 that would have been effective in eliminating serious injury or death.

After the conclusion of Bombyk's testimony and shortly after defense counsel began his cross-examination of Mr. Bombyk, the magistrate decided that it would allow defense counsel to introduce into evidence the American National Standard Institute (ANSI) B–56.1 industry standards, which did not require (and still do not require) seat belts or other operator restraints on forklifts. At this point, plaintiff's counsel informed the court that plaintiff wished to abandon his claim under the risk-benefit theory of liability. In response, counsel for defendant stated:

Your honor, especially in the procedural posture we find ourselves in the middle of cross-examination, it seems a bit unfair, I admit, a little premature. If plaintiff intends to dismiss a claim on a particular theory at the end of his case, I suppose he has the prerogative to do that, but to have all the damaging testimony coming up on direct examination under risk benefit and have the defendant actually in the middle of cross-examination . . . .

The trial court permitted plaintiff to abandon the claim under the risk-benefit theory of liability and instructed the jury as follows:

Now, you've heard some testimony from Mr. Bombyk that relates to that theory which I request that you disregard. In

---

**3.** Specifically, plaintiff argues that only seven pages of the entire transcript of the testimony of Bombyk relates to the technical feasibility of safety devices for the forklift and that plaintiff's

counsel's objections to cross-examination on the risk-benefit issue were sustained only twice. As discussed above, this is a distortion of the record.

order to save time we are not going to have further cross-examination by the defendant on that theory because it's out of the case, but I don't want you to be confused and believe that it's still relevant. We'll give you thorough instructions on that at the conclusion of the case, but I don't want you to draw any inference from the fact that you won't hear cross-examination about it just now. At this point, it's out of the case. . . .

Because the magistrate believed that evidence pertaining to a risk-benefit theory of liability was no longer relevant, he precluded defendant from defending against the criticism that it had ignored an "excessive preventable danger" under a risk-benefit analysis by neglecting to design a technically feasible safer product with an operator restraint system. After specifically instructing defendant Clark to limit questions to the consumer expectation theory of liability, the court sustained numerous objections in defendant's attempt to cross-examine Mr. Bombyk.[4]

In addition, plaintiff successfully limited the scope of the direct testimony of the expert witness for the defense, Mr. Entwisle, the former director of technical operations at Clark. Mr. Entwisle was not allowed to testify that California OSHA does not recommend seat belts on forklifts. He was not allowed to testify on his interpretation of the relevant scientific literature, which he believed indicated that operator restraints or seat belts should not be used on forklifts. He also was not allowed to testify about what the industry approach was in dealing with forklift accidents and risk-hazard analysis during the 1970s, but was limited to testifying about Clark's approach.

With defendant thus foreclosed from defending the criticism that it had ignored the "knowable" technology of a safer design, plaintiff's counsel compounded the prejudice by suggesting in closing argument that it was "Clark's cold-blooded accountants" who were responsible for this indifference to safe product design.

■■■■ It was prejudicial to defendant for the magistrate to allow plaintiff's expert to testify from documents discussing the developing feasibility of operator restraint technology and then to forbid cross-examination on the same subject matter. Refusal to permit cross-examination of a witness concerning matters testified to on direct examination constitutes prejudicial error. *J.E. Hanger, Inc. v. United States*, 160 F.2d 8, 10 (D.C.Cir. 1947). In general, when a party opens up a subject, there can be no objection if the opposing party introduces evidence on the same subject. *See Maxfield v. United States*, 360 F.2d 97, 102 (10th Cir.), *cert. denied*, 385 U.S. 830, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966). The practical effect of the magistrate's rulings was to deny defendant the opportunity to explore evidence (that otherwise would have been inadmissible because it would have been irrelevant) on cross-examination after plaintiff had made unfair prejudicial use of the evidence on direct examination. Plaintiff was allowed to selectively introduce pieces of evidence relating to a risk-benefit theory for his own advantage without allowing defendant the opportunity to present rebuttal evidence to rebut plaintiff's risk-benefit testimony. *See United States v. Lum*, 466 F.Supp. 328, 334 (D.Del.), *aff'd*, 605 F.2d 1198 (3rd Cir.1979). Although a trial court may restrict cross-examination on new matters first raised on cross-examination, the

---

4. Examples of defendant's inability to cross-examine plaintiff's expert on the risk-benefit claim presented during his direct examination are as follows. Defense counsel was precluded from questioning Mr. Bombyk about the National Safety Council's position on operator restraints. Plaintiff's counsel had objected that such inquiry was out of the case and the objection was sustained. Bombyk was not allowed to answer a question about the California OSHA hearings of 1971 after plaintiff's counsel objected to the question, stating, "the question of restraints . . . are no longer in this case as to the defendant's risk-benefit analysis." The objection was sus-

tained. The trial court again instructed defense counsel not to inquire about perceived dangers inherent in the operation of forklifts except in regard to consumer expectation. The court sustained an objection to the cross-examination of Bombyk regarding the studies of the Highway Safety Research Institute at the University of Michigan at Ann Arbor regarding operator restraints. Defense counsel was even precluded from questioning Mr. Bombyk, who had worked as safety director at Chrysler Corporation, about Chrysler's position in regard to operator restraints.

court may not restrict a party's right of cross-examination until that right has been substantially and fairly exercised. *United States v. Pugh,* 436 F.2d 222, 225 (D.C.Cir. 1970). In the present case, the trial court's rulings prevented defendant from substantially and fairly exercising its right of cross-examination.

■ The court's limiting instruction to the jury to "disregard" the testimony "that relates to [the risk-benefit] theory" could not effectively eliminate the prejudice and confusion caused by allowing the risk-benefit theory to be presented by plaintiff and then abandoned. The procedural posture in which the risk-benefit claim was discarded allowed the jury to hear plaintiff's counsel's argument that Clark ignored the "excessive preventable danger" posed by an alleged defect without hearing defendant Clark's response to this argument. For example, the court precluded any testimony that the ANSI committee considered operator restraints and specifically elected not to require or recommend such restraints prior to the date of plaintiff's accident. Defendant was criticized from plaintiff's counsel's opening statement through the presentation of plaintiff's case-in-chief for neglecting to design a technically feasible safer product. The only protection afforded defendant from the impact of the presentation of this theory was the court's instruction that:

> Now you've heard some testimony from Mr. Bombyk that relates to that theory [risk-benefit analysis] which I request that you disregard.

The magistrate failed to give any limiting instruction at the close of all the evidence or an instruction to eliminate confusion about the two different theories of liability. Although defendant did not request such an instruction, defense counsel had strenuously objected throughout the trial to plaintiff's tactic. The record indicates that even if an instruction had been given at the close of the evidence, no curative instruction would suffice to correct the prejudice to defendant. Not only was defendant unable to cross-examine plaintiff's expert on the feasibility-based claim presented during Bombyk's direct examination, but also defendant's expert witness, Mr. Entwisle, was precluded from rebutting plaintiff's expert with his own testimony about relevant hearings, scientific literature and the industry approach at the time, which allegedly indicate that seat belts are not considered to be effective in accident prevention in forklifts.

■ Furthermore, the instruction to disregard all testimony regarding a risk-benefit analysis was erroneous even if plaintiff wished to abandon that theory of liability. Under the consumer expectation standard, a plaintiff must establish that a product is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. *Knitz v. Minster Machine Co.,* 69 Ohio St.2d 460, 466, 432 N.E.2d 814 (1982), *cert. denied,* 459 U.S. 857, 103 S.Ct. 127, 74 L.Ed.2d 110 (1982). Evidence of unsafe, unexpected product performance is sufficient to *infer* the existence of a product defect. *State Farm Fire & Cas. Co. v. Chrysler Corp.,* 37 Ohio St.3d 1, 6, 523 N.E.2d 489 (1988). The unexpected product performance in the present case is the propensity to lateral overturn. However, plaintiff is not arguing that the forklift should be deemed defective because it has a propensity to lateral overturns. Instead he argues that because of the propensity to lateral overturns, the forklift should have an operator restraint system, which presumably is necessary to cure the risk from propensity to overturn laterally. Such an argument, we believe, necessarily entails aspects of a risk-benefit analysis. The issue in the present case is not whether a seat belt could have prevented this particular injury, but whether defendant should be held strictly liable for not having seat belts in all the forklifts it manufactured in 1976. Not every forklift accident is caused by a lateral overturn, and, therefore, even if the jury were allowed to presume that a seat belt would prevent an operator from falling out of a forklift and minimize injury in the event of a lateral overturn, the jury must also consider the feasibility and effectiveness of seat belts in light of other accidents that can occur in forklifts. This court in *Phillips v. Hardware Wholesalers, Inc.,* 762 F.2d 46, 48 (6th Cir. 1985) stated that a design defect case in which the alleged deficit is the lack of opera-

tor restraints requires evidence about the reasonableness of the proposed operator restraints. This court in *Phillips* stated that even though the plaintiff's expert witness had testified that four types of restraints were available for forklifts and would have prevented death, the plaintiff failed to establish a *prima facie* case because he failed to establish the reasonableness of the proposed alternative design. Similarly, in the present case, an examination of the reasonableness of the proposed alternative design necessarily entails a discussion of whether the adoption of the alternative design would have affected the safety of the driver in forklift accidents in circumstances other than a lateral overturn and would have adversely affected the driver's ability to perform his or her job. *Ingram v. Caterpillar Machinery Corp.*, 535 So.2d 723, 728 (La.1988) (plaintiff's expert's bare statement that seat belt would prevent injury is insufficient to support finding that lack of operator restraints was a design defect). Whether under a consumer expectation theory of liability or under a risk-benefit theory of liability, the reasonableness of the proposed alternative design in light of all forklift accidents is an element of plaintiff's proof that the lack of operator restraints was a design defect. Defendant is correct that it is not merely sufficient for plaintiff to present evidence that the risk of lateral overturn was a danger about which an ordinary forklift user was unaware, but also must present evidence that it was a design defect not to have operator restraints. Much of the evidence presented by plaintiff in Francis I under a risk-benefit analysis indicated that the lack of operator restraints was a design defect because an alternative design should reasonably have been adopted. The magistrate should not have instructed the jury to disregard this evidence and should have given defendant the opportunity to rebut it.

⬛ This court reviews the decision of the trial court to grant a motion for a new trial under an abuse of discretion standard. *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980); *Davis by Davis v. Jellico Community Hospital, Inc.*, 912 F.2d 129, 132 (6th Cir.1990). The trial court may grant a new trial on the basis that a substantial harm has occurred as a result of prejudicial testimony. *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790–91 (6th Cir.1989). *See also National Ass'n of Government Employees, Inc. v. National Federation of Federal Employees*, 844 F.2d 216, 221 (5th Cir.1988) ("A court may also order a new trial if some misadventure at trial irreparably prejudiced the jury's verdict."); *Murphy v. Chestnut Mountain Lodge, Inc.*, 124 Ill.App.3d 508, 79 Ill.Dec. 914, 919, 464 N.E.2d 818, 823 (1984) (if plaintiff may present evidence of safer design, then defendant may introduce rebuttal evidence). In the present case, the trial court properly determined that it was unfair and prejudicial to have allowed plaintiff's evidence pertaining to the risk-benefit theory of liability to go to the jury which defendant Clark was precluded from challenging. At the time Mr. Bombyk proffered his testimony relating to the risk-benefit theory, defendant had no basis for objecting to the introduction of such testimony and was prejudiced when its right to rebut such testimony was effectively denied. For this reason, the decision of the magistrate to grant the motion for a new trial at the conclusion of Francis I is affirmed.

### III.

⬛ Defendant has failed to file a cross-appeal in regard to the district court's denial of defendant's motion for JNOV in Francis I, and, therefore, this court lacks jurisdiction to hear this claim on appeal. This court has held that the filing of a notice of cross-appeal is jurisdictional where an appellee wishes to attack part of a final judgment in order to enlarge his rights or to reduce those of his adversary. *S.E.C. v. Youmans*, 729 F.2d 413, 415 (6th Cir.), *cert. denied*, 469 U.S. 1034, 105 S.Ct. 507, 83 L.Ed.2d 398 (1984). Defendant-appellee, Clark, is attempting to attack part of a final judgment and enlarge its right by arguing that it should have been awarded a judgment notwithstanding the verdict at the conclusion of Francis I. Plaintiff Francis' rights would be reduced as he would be denied the opportunity for a new trial. Failure to file a cross-appeal is jurisdictional in this instance. For

this reason, this issue is not properly before this court and is dismissed.

## IV.

We must finally decide whether the magistrate followed the correct procedure in applying newly amended Federal Rules of Civil Procedure, Rule 50(a) in Francis II by granting defendant's motion for a judgment as a matter of law mid-trial after the conclusion of Bombyk's testimony and before plaintiff had been fully heard in regard to the relevant issues.

The final pretrial order in Francis II framed plaintiff's two claims for relief in the following manner: (1) that defendant Clark was liable to plaintiffs for the design of a defective sit-down rider forklift for the reason that the forklift was not equipped with an operator restraint system to protect the user from injury in the event of a lateral overturn (consumer expectation theory); and (2) that defendant Clark failed to affix to the lift truck complete and adequate warnings of the propensity of the forklift to tip over laterally (failure-to-warn theory).

Plaintiff commenced his case-in-chief in Francis II by reading into the record some excerpts from the depositions of former Clark employees taken in other cases. Plaintiff then presented Mr. Bombyk as his expert witness. At the conclusion of Mr. Bombyk's testimony, defendant moved for a judgment as a matter of law pursuant to newly amended Rule 50(a), which states in relevant part:

> *Rule 50.* Judgment as a Matter of Law in Actions Tried by Jury; Alternative Motion for New Trial; Conditional Rulings [Effective on Dec. 1, 1991.]
>
> (a) *Judgment as a Matter of Law.*
>
> (1) If during a trial by jury a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against that party on any claim, counterclaim, cross-claim, or third party claim that cannot under the controlling law be maintained without a favorable finding on that issue.

> (2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

Defense counsel argued in support of the motion that it did not anticipate from the witnesses listed on the pretrial order that plaintiff would have any evidence to support crucial aspects of his two theories of liability—specifically that without additional expert testimony he would have insufficient evidence to demonstrate the adequacy of the warning and proximate cause or design defect and proximate cause.

Plaintiff's counsel responded that the motion was premature because plaintiff had not had the opportunity to offer documents of defendant which had substantial admissions against its own interest relating to these issues, had not heard the testimony of plaintiff Craig Francis, and had not heard the deposition testimony of Hastings and Schell, two Clark engineers.

The court then asked plaintiff's counsel what additional evidence he planned to have admitted by way of documents. Plaintiff's counsel gave a brief summation of exhibits 33, 21, 56, 58, and 128. He stated he intended to show that the warnings were inadequate and that it was reasonably foreseeable to Clark that this incident would occur. Plaintiff's counsel also indicated he would introduce into evidence Exhibit 30, a warning which postdated the manufacture of the Clark forklift at issue, but predated the injury, and was not used by Clark. He stated he would also introduce the warning Clark designed in 1982 which specifically tells the operator not to turn on slopes, and that he would proffer the relevant ANSI standards, which showed that Clark ignored the ANSI requirements and acted unreasonably by taking no action in regard to the warning until 1983.

Defense counsel argued without citing any relevant law that plaintiff would have to establish that the warning breached the standard of care of a reasonably prudent manufacturer and that a behavioral psychologist would have to testify that if the warning had

been different, defendant would have behaved differently in order to establish proximate cause. Defense counsel argued that Mr. Francis was not competent to testify that if the warning had been designed in conformity with Z35 of the ANSI standards, he would have behaved differently. Defense counsel also argued, again without citing any relevant law, that a biomechanical engineer would have to testify that seat belts would have been effective in order to establish a design defect.

Plaintiff's counsel then referred to several Ohio cases, which indicated that although the custom and practice of an industry is of some relevance, it does not furnish the test in failure-to-warn cases. He also stated that he had never heard of a case indicating that a jury was not entitled to hear a products liability plaintiff testify that he would have heeded a warning if it had been given unless an expert witness, such as a behavioral psychologist, supported this testimony. Plaintiff's counsel concluded that defense counsel had not articulated the correct legal standards involved.

The magistrate then sustained the judgment as a matter of law in all respects without consulting the relevant law [5] or without making any specific findings about what facts or law he was relying on.

Plaintiff argues that the magistrate's abrupt ruling precluded him from being "fully heard" with respect to the relevant issues as required by Rule 50(a). He contends that it was improper under Rule 50(a) for the magistrate to make a ruling based merely on the evidence that had been presented and on plaintiff's counsel's brief summation of what the additional evidence was going to show. Plaintiff argues that his counsel's brief summation was not a full presentation of his case and that the magistrate could not make a ruling based on what he surmised the evidence would show and without consulting the

relevant law. Defendant, in contrast, argues that plaintiff was fully heard because the magistrate asked five times what additional evidence his counsel intended to offer.

▆▆▆ It is clear that in the present case the procedural requirements of newly amended Rule 50(a) were ignored. Although the rule states that motions for judgment as a matter of law may be made at any time before submission of the case to the jury, it also states that "such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment." Rule 50(a)(2). In the present case, defendant Clark did not specify what law it was relying on for its argument that Bombyk lacked the necessary qualifications to testify about the adequacy of the warning because he lacked an academic degree in warning design even though he had practical experience in designing warnings, or for its argument that plaintiff had to provide additional expert testimony regarding an industry standard of care, the adequacy of the warning, and the establishment of proximate cause in a failure-to-warn case. The deposition testimony of engineers Hastings and Schell had not been presented, and, thus, defendant could not effectively argue that this testimony would be inadequate to establish a design defect under the consumer expectation theory of liability. *See Moorehead v. Clark Equipment Co.*, 1988 WL 31421 (N.D.Ill. March 29, 1988). We believe a more detailed statement is required by Rule 50(a)(2), and in the present case there was not sufficient foundation for the motion. This failure, however, was not the only error that occurred.

▆▆▆▆▆ Rule 50(a) specifies on its face that a motion for judgment as a matter of law may be granted if during a trial by jury a party has been *fully heard with respect to an issue* and there is no legally sufficient evidentiary basis for a reasonable jury to have

5. For example, *Seley v. G.D. Searle & Co.*, 67 Ohio St.2d 192, 423 N.E.2d 831 (1981) (there is a rebuttable presumption that a plaintiff would have heeded an adequate warning, had one been given); *Bahamas Agricultural Industries, Ltd. v. Riley Stoker Corp.*, 526 F.2d 1174 (6th Cir.1975); *Thompson v. Ohio Fuel Gas Co.*, 9 Ohio St.2d 116, 224 N.E.2d 131 (1967); *Grover Hill Grain*

*Co. v. Baughman–Oster, Inc.*, 728 F.2d 784 (6th Cir.1984); *Brown v. Caterpillar Tractor Co.*, 741 F.2d 656 (3rd Cir.1984); *Habecker v. Clark Equip. Co.*, 797 F.Supp. 381 (M.D.Pa.1992); *Ferebee v. Chevron Chemical Co.*, 552 F.Supp. 1293 (1982), *aff'd*, 736 F.2d 1529 (D.C.Cir.), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984).

found for the party with respect to that issue. The Notes of the Advisory Committee on the Rule indicate what Congress meant by stating that before a Rule 50(a) motion may be granted, a party must have been *"fully heard."* The Committee stated:

> The revision authorizes the court to perform its duty to enter judgment as a matter of law at any time during the trial, as soon as it is apparent that either party is unable to carry a burden of proof that is essential to that party's case. Thus, the second sentence of paragraph (a)(1) authorizes the court to consider a motion for judgment as a matter of law as soon as a party has completed a presentation on a fact essential to that party's case. Such early action is appropriate when economy and expedition will be served. *In no event, however, should the court enter judgment against a party who has not been apprised of the materiality of the dispositive fact and been afforded an opportunity to present any available evidence bearing on that fact.*

(emphasis added). The final sentence of the Note states that the nonmoving party must be apprised of the dispositive issues and afforded an opportunity to present *any* available evidence. Instead of apprising plaintiff of the materiality of what the court considered to be the dispositive issues, the court demanded that plaintiff provide an immediate summation of the exhibits and additional witnesses he wished to introduce and what the evidence would show. A sensible reading of Rule 50(a)'s requirement that a party be "fully heard" indicates that plaintiff's counsel's brief statements in response to the magistrate's on-the-spot questions did not afford plaintiff a reasonable opportunity to be fully heard within the meaning of the rule. Rule 50(a) contemplates that a ruling will be made on the basis of the testimony and documents submitted into evidence. The magistrate did not rule that the admission of the evidence, which plaintiff wanted to introduce, would be irrelevant to the materiality of what the magistrate considered a dispositive issue. To the contrary, it appears that many of the exhibits and witnesses which plaintiff wished to introduce had been admitted into evidence during the first trial (Francis I). The magistrate

had refused to grant defendant's motion for JNOV at the conclusion of Francis I and gave no reason for refusing to consider this evidence in Francis II. Moreover, it is impossible for this court to review whether, when all reasonable inferences from the evidence are construed in favor of the nonmoving party, a reasonable juror could find in favor of the nonmoving party if he is precluded from presenting the evidence he considers relevant.

In the present case, the magistrate did not apprise plaintiff of the materiality of the facts or issues it considered dispositive as required by the Advisory Note, but instead abruptly granted defendant's motion for a judgment as a matter of law for unspecified reasons. If the magistrate considered it material that plaintiff did not have another live expert witness to testify, plaintiff should have been apprised accordingly. The final statement of the Advisory Committee Notes indicates that when a motion for judgment according to law is made, the responding party should have *"an opportunity to cure any deficiency in [its] proof that may have been overlooked"* until called to the party's attention by the motion. Plaintiff was not given this opportunity.

■ Finally, the magistrate did not specify the controlling law he was relying on to determine that plaintiff had failed to carry his burden of proof on a dispositive issue. In the absence of specific findings by the magistrate, it is impossible for the appellate court to review the magistrate's decision. Although it is not explicitly required by Rule 50, we believe it is implicit that in granting a motion for a judgment as a matter of law before the conclusion of all the evidence, it is incumbent on the trial court to specify the materiality of the dispositive issue and the controlling law which indicates that the nonmoving party has failed to carry its burden of proof in regard to that issue. Instead, in the present case, the magistrate failed to give any indication for its decision.

■ To conclude, although plaintiff vigorously argued that the motion was premature because there was a substantial amount of evidence to be presented on relevant issues,

the magistrate did not give plaintiff a reasonable opportunity to respond to the motion which took him by surprise. The plain meaning of Rule 50(a)'s requirement that a party be "fully heard" was violated. Without recessing the trial to consider the relevant law or to allow counsel a reasonable amount of time to respond, the magistrate summarily granted the motion without making specific findings on what dispositive issue or issues plaintiff failed to carry his burden of proof. The magistrate's hasty and peremptory decision defeated the purpose of newly amended Rule 50(a), which is to allow early action when economy will be served. Consideration of the motion was premature because the procedural requirements of Rule 50(a) were not complied with. For these reasons, we reverse the judgment as a matter of law in regard to Francis II on procedural grounds and remand for a new trial.[6]

## V.

To conclude, the trial court is hereby AFFIRMED in part and REVERSED in part. The decision to grant defendant's motion for a new trial at the conclusion of Francis I is AFFIRMED. The decision to grant defendant's motion for a judgment as a matter of law under newly amended Rule 50(a) in Francis II is REVERSED and the case is REMANDED for proceedings consistent with this opinion.

DAVID A. NELSON, Circuit Judge, concurring in part and dissenting in part.

I concur in the panel's disposition of the appeal of plaintiff Craig Francis and in the panel's treatment of the trial court's denial of the defendant's motion for judgment *n.o.v.* I respectfully dissent, however, from the panel's conclusion that jurisdiction is lacking over the appeal of plaintiff Lisa Francis.

Craig and Lisa Francis are husband and wife. Both of them joined as plaintiffs in this action, Mr. Francis seeking damages for personal injuries and Mrs. Francis seeking damages for loss of consortium. The *Francis I* jury found the husband's damages to be $394,000 and the wife's damages to be $25,-000.

After the trial court entered judgment for the defendant in *Francis II,* counsel for Mr. and Mrs. Francis filed a notice of appeal on behalf of "Plaintiffs." The plural form of the noun was used both in the body of the notice ("Notice is given that *Plaintiffs* hereby appeal . . .") and in the signature block, which identified the signator as "Attorney For *Plaintiffs* ". (Emphasis supplied.)

On the strength of *Minority Employees v. Tennessee Dept. of Employment Sec.,* 901 F.2d 1327 (6th Cir.), *cert. denied,* 498 U.S. 878, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990), my colleagues on the panel conclude that the notice was not sufficient to designate Mrs. Francis as an appellant. In *Minority Employees,* however, there were four plaintiffs—a corporation and three individuals—and it was arguably unclear which of the four wanted to appeal. Judge Guy, whose vote was decisive (see *Minority Employees,* 901 F.2d at 1340, n. 1, Guy, J., concurring), explained in his separate concurrence that he thought the notice of appeal filed on behalf of the "plaintiffs" could have been designed to specify the corporate plaintiff only, because collective nouns are sometimes treated as plural. In the case at bar, however, only the defendant—Clark Equipment Co.—has such a name. The name of Craig Francis is unequivocally singular, and so is that of Lisa Francis. Craig and Lisa Francis are the only plaintiffs in the case, of course, and on these facts one wonders how a notice of appeal filed by "Plaintiffs," in the plural number, could possibly be thought to have

---

6. It should be noted that on remand the trial court should heed the advice of the Advisory Note on how Rule 50(a) is to operate. The Note states:

In order further to facilitate the exercise of the authority provided by this rule, Rule 16 is also revised to encourage the court to schedule an order of trial that proceeds first with a presentation on an issue that is likely to be dispositive, if such an issue is identified in the course of pretrial. Such scheduling can be appropriate where the court is uncertain whether favorable action should be taken under Rule 56. Thus, the revision affords the court the alternative of denying a motion for summary judgment while scheduling a separate trial of the issue under Rule 42(b) or scheduling the trial to begin with a presentation on that essential fact which the opposing party seems unlikely to be able to maintain.

been filed on behalf of one of the plaintiffs but not the other.[1]

It is true that *Minority Employees* appears to hold that "appellants must include in the notice of appeal the name of each and every party taking the appeal." *Id.* at 1330. *Minority Employees* also acknowledged, however, that "there may be some departures from naming in the body of the notice that will not be found to be fatal." *Id.* at 1335. Citing the latter passage, a subsequent published decision of this court holds that it is possible for multiple plaintiffs to be specified as appellants without their actual names being set forth anywhere in the notice of appeal. See *Adkins v. United Mineworkers of America,* 941 F.2d 392, 396–98 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1180, 117 L.Ed.2d 424 (1992).

The plaintiffs in *Adkins* numbered in the hundreds. *Id.* at 394. They filed a notice of appeal specifying as appellants "all of the Plaintiffs to this action as set out in the Complaint which has been filed herein as well as in all amendments thereto." *Id.* at 396. Notwithstanding that the plaintiffs were not individually named anywhere in the notice of appeal, the *Adkins* panel concluded, by a vote of 2 to 1, that "we have jurisdiction over all plaintiffs who pursued the complaint in the district court to final judgment." *Id.* at 398.[2]

The *Adkins* majority pointed out that the plaintiffs in *Minority Employees* "had failed ... to designate *all* the plaintiffs," and the *Adkins* majority noted that "[t]he majority in *Minority Employees* emphasized that 'the use of the term "plaintiffs" in the body of the notice failed to designate the individual plaintiffs.'" *Id.* at 398, n. 6, quoting *Minority Employees,* 901 F.2d at 1322. The notice of appeal in *Adkins* was absolutely unequivocal, by contrast, and the *Adkins* panel held that the words "all of the Plaintiffs" meant what they said notwithstanding the lack of individual naming.

Because Craig and Lisa Francis are the only plaintiffs in the case at bar, the reference to "Plaintiffs" in the notice of appeal filed in this case can only be a reference to the two of them. The notice of appeal before us here is every bit as unequivocal as the notice of appeal in *Adkins* was. If *Adkins* was decided correctly, therefore, it seems to me that we necessarily have jurisdiction over both plaintiffs in the instant case.

---

**1.** The fact that there are only two plaintiffs distinguishes the instant case from *Van Hoose v. Eidson,* 450 F.2d 746 (6th Cir.1971), where there were four plaintiffs. The title of that case, as set forth in the caption of the notice of appeal, identified the plaintiffs only as "Floyd Van Hoose, et al, Plaintiffs–Appellants." This court said that "[t]he term 'et al' does not inform any other party or any court as to *which* of the plaintiffs desire to appeal," suggesting that those desiring to appeal might have been more than one of the plaintiffs but fewer than all of them. *Van Hoose,* 450 F.2d at 747 (emphasis supplied). No such ambiguity is present in the case at bar, where there are only two parties plaintiff and "Plaintiffs" can only be a reference to both of them.

**2.** Judge Krupansky filed a strong dissent in *Adkins,* expressing an understanding of the majority opinion in *Minority Employees* comparable to the understanding I entertained prior to the decision in *Adkins.* See, *e.g., Sheet Metal Workers Int'l Assn. v. Dane Sheet Metal, Inc.,* 932 F.2d 578, 581 n. 3 (6th Cir.1991) (opinion by Nelson, J.). As one who dissented in *Minority Employees,* however, I acknowledge that I may not have as good an understanding of the logic of that decision as do those judges who joined in the majority opinion. While Judge Krupansky was among that number, so was the author of the majority opinion in *Adkins,* Judge Wellford. The result reached in *Adkins* is one that would have been compelled by the language of the Federal Rules, in my view, were it not for *Minority Employees;* I am therefore inclined to defer to Judge Wellford's understanding of what the *Minority Employees* majority actually had in mind.