NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0542n.06
Filed: June 23, 2005

Nos. 03-6389/6628

## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

PEOPLE FIRST OF TENNESSEE,

      Intervenor-Appellant,

WEST TENNESSEE PARENT-GUARDIAN
ASSOCIATION,

      Intervenor-Appellees,

v.

STATE OF TENNESSEE; PHIL BREDESEN,
Governor of the State of Tennessee; VIRGINIA
TROTTER BETTS, Commissioner, Tennessee
Department of Mental Health and Mental
Retardation; LEON OWENS, Superintendent,
Arlington Developmental Center,

      Defendants-Appellees.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF
TENNESSEE

_____/

Before:      MARTIN and ROGERS, Circuit Judges, and McKINLEY, District Judge.[*]

      BOYCE F. MARTIN, JR., Circuit Judge. These cases have a long and tortured history. In

addition to two different district judges, we are the seventh different Sixth Circuit panel to review

_____

      [*]The Honorable Joseph H. McKinley, Jr., United States District Judge for the Western
District of Kentucky, sitting by designation.

the case. Three cases were consolidated for purposes of oral argument. We now render our decision

on two of those appeals. In Nos. 03-6389 and 03-6628, the United States appeals the district court's

rejection of the parties' settlement agreement. We conclude that the district court improperly relied

on testimony not in the record and not subject to cross-examination in rejecting the parties'

settlement agreement and we therefore VACATE its decision and REMAND for further

proceedings. We further instruct the district court to reconsider this settlement agreement, in

addition to the parties' new settlement agreement at the previously scheduled July 25-29, 2005,

fairness hearing.[1]

## I.

The parties to these appeals are the United States, the State of Tennessee, People First of

Tennessee, a statewide advocacy organization for people with disabilities, and the West Tennessee

Parent-Guardian Association of Arlington Developmental Center, a state-operated facility for

persons with mental retardation. The United States initiated this case against the State of Tennessee

on January 21, 1992, by filing a complaint pursuant to the Civil Rights of Institutionalized Persons

Act, 42 U.S.C. §§ 1997, *et seq*. The complaint challenged the conditions at Arlington

Developmental Center and sought injunctive relief, requiring the State "to take such action as will

provide constitutional conditions of care to persons who reside at Arlington." After a trial, the

district court found that the conditions at Arlington violated the federal constitutional and statutory

rights of its residents and ordered the submission of a remedial plan. The district court later

---

[1]In the third appeal, No. 00-6120, the State of Tennessee appeals the district court's July 17, 2000, order regarding the scope of the certified class of plaintiffs. Although the appeals were argued together, it is not necessary that they be decided simultaneously.

approved a negotiated Remedial Order, on September 2, 1994, as a full and appropriate remedy for

the constitutional violations.

The Remedial Order mandated corrective action in order "to guarantee the statutory and

constitutional rights of residents of Arlington Developmental Center." The Remedial Order also

committed the State to reducing Arlington's population to no more than two hundred residents by

placing qualified individuals into community residences and programs. The Remedial Order

agreement between the United States and Tennessee also provided for a court-appointed Monitor

to evaluate the State's compliance.

Prior to the United States-initiated suit, on December 12, 1991, People First filed its own suit

challenging the conditions at Arlington. By the time of the Remedial Order in 1994, the *People*

*First* case was not yet resolved. In light of the Remedial Order, the plaintiffs in *People First* filed

a renewed motion for class certification on June 12, 1995. On September 26, 1995, the district court

certified a class to include

> all persons who on or after December 12, 1989, have resided, or are residing at the
> Arlington Developmental Center; all persons who have been transferred from
> Arlington Developmental Center to other settings such as intermediate care facilities
> or skilled nursing facilities but remain defendants' [State of Tennessee]
> responsibility; and all persons at risk of being placed at Arlington Developmental
> Center.

The district court then adopted the findings of fact in the United States case into the *People First*

case, and granted *People First* intervenor status in the United States action, in effect consolidating

the cases.

In the consolidated actions, the Parent-Guardian Association appealed various issues to this

Court. The panel concluded that there was "no abuse of discretion in this or any other aspect of the

district court's treatment of the class certification issue," but noted, however, that "the state itself questioned certain aspects of the class definition," i.e., the "at risk" language, but because the State did not appeal, "these matters [were] not properly before the court." *People First of Tennessee v. Arlington Developmental Center*, 145 F.3d 1332 (6th Cir. 1998) (unpublished).

In the meantime, the United States filed numerous motions for contempt regarding conditions at Arlington based on Tennessee's failure to comply with the Remedial Order. A settlement was reached between the United States and Tennessee, which led to the creation of the Community Plan for West Tennessee. On August 21, 1997, the Community Plan was approved and adopted by the district court, and then entered as an Order. The district court ordered that the Plan "shall apply to all members of the class certified" in the *People First* case, and that the Plan "supplements, but does not rescind, the Remedial Order."

The State appealed to this Court. According to the new panel,

> Tennessee now claims that the district court wrongly determined that the consent order in *United States v. Tennessee* applies to the *People First* class, that modifications to the consent order were an abuse of discretion, and that judicial enforcement of the consent order inordinately infringes upon state sovereignty. While this panel does not adopt every aspect of the district court's opinion, it will affirm the judgment.

*United States v. Tennessee*, 181 F.3d 105, 1999 WL 357785 (6th Cir. 1998) (unpublished).

Subsequently, People First of Tennessee moved for an order of contempt against the State for failing to provide services to class members consistent with the Remedial Order and the Community Plan. On June 29, 1999, the district court issued an order finding the State in contempt and set a hearing to determine the remedy. Prior to the hearing, the parties negotiated an Agreed Order that was approved by the court on August 12, 1999.

When the State later refused to provide services to those the other parties believed were among the "at risk" class, the district court directed the parties to "submit briefs on the scope of the existing class definition (including the history and definition of individuals at risk of being admitted to ADC) and its possible application as an eligibility criterion under the waiver." A hearing was held on June 13 and 17, 2000, and the district court then issued an order on July 17, 2000, clarifying the scope of the "at risk" class. The district could held

> that the 'at risk' portion of the class consists of all individuals who reside in the geographic region served by Arlington Developmental Center [] and who have demonstrated medical needs sufficient to require institutional care in the absence of home or community based services . . . . [T]his definition utilizes existing Medicaid eligibility guidelines as objective medical criteria for determining which individuals are 'at risk' of being placed at ADC.

This order is the subject of appeal in No. 00-6120.

The State filed a notice of appeal and on September 22, 2000, another different panel of this Court entered a stay pending appeal noting that "the state raises serious questions regarding the standing of those included in the 'at risk' group to obtain relief." *See* Order of September 22, 2000, No. 00-6120.

The parties then engaged in additional settlement negotiations and submitted a joint motion to the district court on December 11, 2001, requesting that the (new) district court (judge) vacate the July 17, 2000 order regarding the "at risk" class and approve the settlement agreement. The district court entered an order on December 14, 2001 to the effect that it was inclined to grant the parties motion should the matter be remanded by this Court. On January 8, 2002, a motions panel, composed of a different set of judges of this Court, entered an order remanding the matter to the district court for consideration of the parties' joint motion for approval of the settlement agreement.

The settlement agreement resolved the "at risk" class issue — the parties agreed on a new definition, not as broad as the district court's definition, but one that encompassed individuals not within the first two clauses of the class definition. The United States, the State of Tennessee, People First of Tennessee, and the Parent-Guardian Association all signed the settlement agreement and a stipulation to the court asking approval of the agreement. The district court then held a fairness hearing.

Just prior to the fairness hearing, the Parent-Guardian Association decided it no longer agreed to the settlement agreement and asked the court to reject the agreement. The district court ruled that the Parent-Guardian Association was bound by its stipulation, but the court would permit the Association to *proffer* its evidence to provide a more complete record. The United States, Tennessee, and People First objected to the introduction of any adverse evidence, and further stated that if the evidence was later admitted, the parties were entitled to cross-examine the Association's witnesses. The district court stated that it was capable of differentiating between what evidence was in the record and what was not, and recognized the parties continuing objection. Thus, the Association's witnesses testified and were not cross-examined. The district court then rejected the settlement agreement, finding it "as not being in the best interest of the class." *United States v. Tennessee*, 256 F. Supp. 2d 768, 771 (W.D.Tenn.2003). In its order, the district court specifically relied on the testimony of Parent-Guardian Association witnesses who were part of the *proffer*, and whose testimony was not in the record, and consequently, were not cross-examined. The United States' motion to alter or amend the order was denied on October 7, 2003, and a notice of appeal in

Nos. 03-6389 and 03-6628 was filed by the United States and intervenor People First of Tennessee.[2]

Following entry of the final order rejecting the settlement agreement, a motion was filed in this Court seeking to reinstate the State's appeal from the July 17, 2000, order regarding the "at risk" class — an issue that had been tentatively resolved by the now-rejected settlement agreement. Another new panel of this Court denied the motion to reinstate the appeal on February 5, 2004. One month later, upon a motion to reconsider, this Court without explanation entered an order reinstating the appeal. The appeal in No. 00-6120 is also before this panel, but we have not yet decided that appeal.

On April 5, 2004, the district court, pursuant to its continuing jurisdiction over the Remedial Order and Community Plan, issued an Order Requiring the Defendants to Appear and Show Cause relative to contempt proceedings for violations of the Remedial Order. The parties yet again began settlement negotiations and eight months later, on December 1, 2004, the United States, the State of Tennessee, and People First of Tennessee signed a new Agreement Resolving Show Cause Motion, that, according to these three parties, "would, if entered, fully resolve the issues in [Nos. 03-6389 and 03-6628]." On December 28, 2004, the Parent-Guardian Association filed a motion asking the district court to reject the New Settlement Agreement and requesting a Temporary Restraining Order enjoining the State from implementing any terms of the New Agreement. This motion is currently pending before the district court. A new fairness hearing was held on January 10, 2005, on April 11, 2005, and is scheduled to continue from July 25, 2005 through July 29, 2005.

---

[2]People First's argument on appeal is that the district court abused its discretion in rejecting the settlement agreement. Because of our conclusion in the United States' appeal, we need not reach this issue.

**II.**

In Nos. 03-6389 and 03-6628, we conclude that the district court improperly relied upon testimony that was proffered, but excluded and not subject to cross-examination, in rejecting the parties' settlement agreement. We therefore vacate the district court's order rejecting the settlement agreement and remand for further consideration and instruct the district court to consider both settlement agreements at its upcoming fairness hearing.

At the fairness hearing in 2003, after finding that Parent-Guardian Association was bound by its signing of the settlement agreement, the district court permitted the Association to proffer testimony for purposes of developing the record for appeal. Assuring the United States that the testimony was not in the record and was only being heard for purposes of a proffer, the district court ruled that cross-examination was unnecessary despite the continuing objections of the United States. The crux of the United States' appeal is that in rejecting the parties' settlement agreement, the district court relied on and specifically cited to evidence that was part of the proffer, unchallenged by cross-examination, and not in the record. Essentially, the United States asserts that it was entitled to cross-examine the Parent-Guardian Association's witnesses if the district court intended to rely upon them in rendering its decision.

We agree with the United States that it is reversible error for the district court to prohibit cross-examination of witnesses it then relies upon for its decisions. *See Francis v. Clark Equip. Co.*, 993 F.2d 545, 550 (6th Cir. 2003) ("refusal to permit cross-examination of a witness concerning matters testified to on direct examination constitutes prejudicial error"); *see also Goldberg v. Kelly*,

397 U.S. 254, 269 (1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses.").

Here, the district court conclusively stated that it was permitting only a proffer of evidence to develop the record for appeal, but that the evidence would not be admitted into the record. The district court recognized the United States', Tennessee's, and People First's continuing objections to the evidence and their objection to any consideration of the evidence by the district court in the absence of cross-examination. The district court then relied on proffered evidence in denying approval of the settlement agreement, specifically relying upon Dr. Kastner, an expert witness presented by the Parent-Guardian Association.

Parent-Guardian Association asserts that Dr. Kastner's testimony was merely cumulative of the testimony of numerous parents, guardians, family members, and other interested parties, whose testimony was properly admitted and considered by the district court. Thus, they claim, any error was harmless. The United States points out that Dr. Kastner was the only expert to testify against the settlement agreement, and that Dr. Kastner's testimony formed the basis for the district court's concerns.

The testimony elicited by the Parent-Guardian Association against the settlement agreement essentially concerned the Association's opposition to the closing of Arlington Developmental Center and the eventual community placement of its residents.[3] Many family members testified that they

---

[3]We note only in passing that the major objections to the settlement agreement by the Parent-Guardian Association and the district court appear to be over the closing of Arlington Developmental Center. While we express no opinion about the wisdom or lack thereof of closing Arlington, it is our understanding that the State of Tennessee has the power to close Arlington regardless of a provision to that effect in the settlement agreement.

preferred that Arlington remain open. Dr. Kastner testified that he does not believe adequate evidence exists to show that community care is better than institutional care, and that community care is often insufficient. Dr. Kastner also testified that this fact often leads to placement of the mentally retarded in nursing homes, which is not an ideal environment. Dr. Kastner also testified that there is a significantly increased risk of death in community placement versus institutional settings.

The district court's opinion stated that it "finds troubling, testimony that persons unable to receive adequate medical care in the community may be placed in nursing homes." Furthermore,

> the Court finds compelling the testimony concerning mortality rates in the community versus in institutions. Dr. Kastner opined that studies indicate that a substantial increase in actual deaths exists as opposed to expected deaths among those placed in the community. Moreover, Dr. Kastner asserted that studies indicate that there is a significant increase in the relative risk of mortality in the community versus in institutions . . . The Court cannot take lightly expert testimony that indicates that an increase in mortality rates exists in the community.

It is evident to us that the district court relied upon Dr. Kastner's testimony as a basis for its rejection of the settlement agreement. While the district court also stated that it cannot "cavalierly ignore the observations and the real life stories of the guardians and family members who live with these issues daily," thereby also relying on the personal stories of families affected by Arlington Developmental Center, we cannot ignore the fact that Dr. Kastner was the only expert to testify against the settlement agreement. In fact, Dr. Kastner's testimony regarding a lack of adequate community care, inadequacy of nursing home facilities, and increased mortality rates in community care facilities went well beyond the personal stories of those affected, and was not merely cumulative. The district court's reliance on this testimony, without the benefit of cross-examination, was error.

**III.**

We therefore VACATE the district court's order and REMAND for further consideration

at the July 25-29th hearing.