996 F.2d 1216
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Donna ROBERTS, Plaintiff-Appellant,
v.
AUTOALLIANCE INTERNATIONAL, INC., Defendant-Appellee.
 No. 92-1447.
 United States Court of Appeals, Sixth Circuit.
 June 15, 1993.
 
 Before BOGGS and BATCHELDER, Circuit Judges, and MANOS, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Roberts appeals the district court's denial of her motions to amend her complaint and the summary disposition of her complaint. We find that the district court abused its discretion in refusing to permit Roberts to delete a paragraph from her complaint. Our ruling follows from our finding that the district court erroneously held that count I of Roberts's complaint would have been preempted by Labor Management Relations Act § 301 even if Roberts's proposed changes had been permitted.
 
 
 2
 * A. Facts
 
 
 3
 Donna Roberts joined Defendant Mazda Motor Manufacturing[1] as an assembly line worker on February 29, 1988. After a short training program, she entered the Trim and Final Department and performed repetitive hand, wrist, and arm motions for over forty hours per week. In June 1988, she complained of hand and wrist pain, and one of Mazda's doctors restricted her to doing light tasks.
 
 
 4
 Roberts's supervisor allegedly refused to honor the medical restrictions and insisted that she perform her line job. After a second visit to Mazda's doctors, Roberts was given similar orders restricting her work and, upon Roberts's return, her supervisor allegedly made her wash floors because he said that was the only work he had available for her. Mazda then gave Roberts a different assembly line job, but after she found that she could not do this job either, she was placed on medical leave. In August 1988, Roberts was called back to work and given a temporary job answering phones while the computerized phone system was being repaired, but when that job ended, Mazda told Roberts they had no work for her to do. Roberts was returned to medical leave and began participating in Mazda's salary continuation program.
 
 
 5
 In September 1988, Roberts filed for workers' compensation alleging that she suffered from bilateral carpal tunnel syndrome as a result of her work. Mazda disputed the claim, arguing that Roberts's injury was not work-related. She was found disabled for a closed period and she appealed that decision.
 
 
 6
 In August 1989, after receiving 52 weeks of partial pay under the salary continuation program, Roberts's seniority was terminated in accordance with the collective bargaining agreement ("CBA") because she was unable to return to work. Her termination letter reminded her that she could apply for long term disability benefits, which she did, and benefits were approved. She also complained to her union about the termination of her seniority and the union filed a grievance with Mazda.
 
 
 7
 In September 1990, the union and Mazda met to discuss several labor relations issues, including the policy of terminating workers' seniority upon expiration of the 52 weeks of partial salary. Mazda agreed to restore seniority to the workers who were discharged under this plan and Roberts's employment status was returned to "inactive," which was her status in August of 1989.[2] Roberts's "inactive" employment status was guaranteed through the expiration of the CBA on March 3, 1991.
 
 
 8
 In October 1990, Roberts filed a three-count complaint in the Wayne County Circuit Court.
 
 
 9
 In November 1991, during the pendency of this case, Roberts's long-term disability benefits were terminated (as was appropriate under the Employee Benefit Plan) and her seniority was terminated pursuant to the provisions of the CBA.[3]
 
 B. Procedural Facts and History
 
 10
 In October 1990, Roberts filed a three-count complaint in the Wayne County Circuit Court. Count I, entitled "Worker's Compensation Discrimination--MCLA 418.301(11)," incorporated by reference certain general allegations and then alleged:
 
 
 11
 25. Defendants' [sic] terminated Plaintiff [sic] employment as a result of her assertion of a work-related medical condition.
 
 
 12
 26. In the alternative, Defendant Mazda's policy of terminating all persons who remain off work greater than 52 weeks is intended to discriminate against persons who allege work-related injuries.
 
 
 13
 27. In the alternative, Defendants discriminated against Plaintiff by failing or refusing to offer her work within her restrictions, whereas other persons without a work-related condition were accommodated at the plant.
 
 
 14
 Count II ("Handicap Discrimination") alleged that Mazda discriminated against Roberts because of her physical handicap in violation of the Michigan Handicappers' Civil Rights Act. Count III ("Handicap Discrimination--Federal Rehabilitation Act of 1973") alleged that Mazda's refusal to accommodate Roberts's handicap violated federal law.
 
 
 15
 In November 1990, Defendant Mazda removed Roberts's suit to federal court based on federal question jurisdiction. In December 1990, Roberts moved to have the case remanded to state court arguing only that the federal court had no jurisdiction over the workers' compensation discrimination claim (count I). This motion was denied on February 21, 1991. On March 4, 1991, Roberts moved to dismiss voluntarily counts II and III of her complaint. On March 21, Mazda filed a motion to dismiss or for summary judgment, contending, among other things, that count I was preempted by the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (LMRA § 301).
 
 
 16
 On July 11, the court ruled on both parties' March 1991 motions. It wrote:
 
 
 17
 Count I plainly invites the court to interpret the CBA by finding that Mazda's practice of terminating workers who are absent for 52 consecutive weeks--a policy that is set out in the CBA at Article VIII, § 5.1--discriminates against persons with work-related injuries. Plaintiff reinforced this stance when she testified in deposition that she presumed her termination related to a contract interpretation dispute between Mazda and her union. While plaintiff opposes defendants' motion with arguments that she was a victim of discrimination by her supervisor while she worked in the Mazda plant, there is no escaping that plaintiff has challenged the discriminatory policies of the CBA on the face of her complaint. Although the court could analyze the allegations of discrimination by the supervisor without resorting to the CBA, the court must interpret the CBA to reach the accusations of the complaint.
 
 
 18
 (footnote omitted.) The district court then ruled that count I was preempted by LMRA § 301 because it required interpretation of the CBA and ordered Mazda to supplement its motion for dismissal or summary judgment with a brief on why count I failed to stated a claim under § 301. Finally, the court denied without prejudice Roberts's request for voluntary dismissal of counts II and III:
 
 
 19
 Because the court finds in this order and opinion that the doctrine of federal preemption prohibits the remand of count I to the Michigan Circuit Court, plaintiff may be prejudiced by the granting of her motion to dismiss counts II and III. The court, therefore, will deny that motion without prejudice.
 
 
 20
 On August 7, as part of her response to Mazda's brief on the issue of whether Roberts's complaint stated a claim under § 301, Roberts moved to delete[4] paragraph 26 from her complaint. On August 21, Roberts moved to amend her complaint by substituting the following language for paragraph 26: "Defendant discriminated against Plaintiff by harassing her, giving her job assignments in violation of her restrictions after reporting her work-related injuries." On November 25, 1991, Roberts moved to amend her complaint to add a claim based on Mazda's alleged failure to notify her properly of her termination.[5] Mazda opposed each of these motions.
 
 
 21
 On March 26, 1992, the district court issued two decisions. In one of these, the district court denied the two motions to amend (filed August 21 and November 25). After setting out the applicable law, the court analyzed the first motion to amend in one paragraph:
 
 
 22
 In the present case, in her first motion to amend the complaint, plaintiff is seeking to substitute different language in paragraph 26 of the original complaint and effectively remove any reference to a termination policy in the collective bargaining agreement under which plaintiff worked. This request comes after the court has ruled that count I is preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. 185, and after plaintiff has filed motions to voluntarily dismiss counts II and III ... and dismiss paragraph 26 completely. It appears to the court that plaintiff's first motion to amend is made with a dilatory motive to remove all vestiges of a federal question from the complaint. Additionally, at this late stage in the proceedings, allowing an amendment would cause undue delay as well as be prejudicial to defendant, because it would require further discovery and incur additional expense. These factors persuade the court that plaintiff's first motion to amend the complaint should be denied....
 
 
 23
 Roberts's second motion to amend was also denied. The district court reasoned that amendment would cause undue delay and "simply add another allegation subject to § 301 preemption which, under the facts of this case, [might] not survive a motion to dismiss."
 
 
 24
 In its second opinion of March 26, the court granted Mazda's motion for summary judgment, holding that Roberts's facts could not sustain a § 301 claim. The district court denied without discussion Roberts's motion to delete paragraph 26 from her complaint.[6]
 
 II
 
 25
 We are asked to review the district court's decisions granting Mazda's motions for dismissal or summary judgment on counts I, II, and III and denying Roberts's motions to amend her complaint and to delete paragraph 26.[7] While we ultimately resolve this case on grounds that the district court abused its discretion in refusing to permit Roberts to modify her complaint, the interconnectedness of the preemption issue and Roberts's requests to modify her complaint requires that we first address the preemption issue.
 
 A. Preemption by § 301
 
 26
 Mazda's motion was a motion to dismiss, or, in the alternative, a motion for summary judgment. The district court treated the motion as one for summary judgment, so this court reviews the district court judgment de novo. Adkins v. United Mine Workers, 941 F.2d 392, 399 (6th Cir.1991), cert. denied, 112 S.Ct. 1180 (1992).
 
 
 27
 The district court relied primarily on the face of Roberts's complaint, emphasizing particularly paragraph 26, in granting Mazda's motion for summary judgment. However, one additional fact was used by the district court to support its finding of preemption:[8] the deposition testimony of Roberts in which, according to Mazda, she "admits" that her claim is governed by the CBA. We first dispose of this argument.
 
 
 28
 Summarizing Roberts's testimony and giving to Mazda the benefit of the doubt as to its meaning, we find that Roberts testified that she understood that (1) her employment was governed by the CBA, and (2) Roberts's union grieved her discharge on grounds that the CBA should not be interpreted in the way in which Mazda was interpreting it. Mazda then argued in the district court and before us that preemption was mandated because Roberts "admitted" that her employment was governed by the CBA and that her termination turned on the meaning of the CBA. The district court apparently agreed with this argument,[9] but we do not. What Roberts understood to be the union's basis for grieving her termination has little, if anything, to do with whether the claim of discrimination she raises in this lawsuit is governed by the CBA. What matters is whether her legal theory of this case requires interpretation of the CBA. Her statements at the deposition cannot be stretched as far as Mazda would like them to go.[10]
 
 
 29
 We turn now to the preemption issue. Without engaging in an extended discussion of the cases developing the doctrine of § 301 preemption,[11] we identify the issue in this case as whether Roberts's suit is sufficiently "independent" of the CBA to withstand the preemptive force of § 301. The controlling precedents on this issue are Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399 (1988) and Smolarek v. Chrysler Corp., 879 F.2d 1326 (6th Cir.) (en banc), cert. denied, 493 U.S. 992 (1989).
 
 
 30
 In Lingle, the plaintiff was injured, allegedly at work, and filed a workers' compensation claim. Her employer did not believe that she was injured at work and fired Lingle for filing a false workers' compensation claim. The union grieved the discharge, objecting that Lingle was not fired for "just" or "proper" cause as the CBA required. At the same time, Lingle filed an action in state court alleging she had been discharged for exercising her rights under the state workers' compensation laws. Both the district court and the Seventh Circuit (en banc) held that Lingle's claim was preempted.
 
 
 31
 The Supreme Court reversed. After reviewing its prior § 301 preemption decisions, the Court wrote:
 
 
 32
 "[To] show retaliatory discharge, the plaintiff must set forth sufficient facts from which it can be inferred that (1) he was discharged or threatened with discharge and (2) the employer's motive in discharging or threatening to discharge him was to deter him from exercising his rights under the Act or to interfere with his exercise of those rights." [citations to state case law omitted] Each of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement. To defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge; this purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement. Thus, the state-law remedy in this case is "independent" of the collective-bargaining agreement in the sense of "independent" that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement.
 
 
 33
 Lingle, 486 U.S. at 407 (emphasis added) (citations omitted). The Court rejected the Seventh Circuit's view that the claim was preempted because analyzing the discharge under the CBA or under state tort law involved deciding the same factual issues.
 
 
 34
 In a post-Lingle decision, this Court, sitting en banc, held that a workers' compensation discrimination/retaliatory discharge claim was not preempted by § 301. Smolarek, 879 F.2d at 1331. This Court cited Lingle throughout its decision and concluded that the claim was "sufficiently set out as separate and apart from a collective bargaining contract claim, and thus avoid[ed] preemption." 879 F.2d at 1331; cf. Dougherty v. Parsec, Inc., 872 F.2d 766 (6th Cir.1989) (tortious interference with contract/business relationship claim not preempted by § 301 because there was no need to interpret the contract (the CBA) in order to find that another had tortiously interfered with it).
 
 
 35
 In light of Lingle, and given the way Roberts drafted her complaint, the question before the district court in the instant case was easy. Paragraph 26 alleges that the provisions of the CBA are discriminatory. This allegation makes Roberts's claim dependent on the CBA because the district court would have to interpret the CBA to reach plaintiff's claim. And, "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law ... is pre-empted and federal labor-law principles--necessarily uniform throughout the Nation--must be employed to resolve the dispute." Lingle, 486 U.S. at 405-06 (footnotes omitted).
 
 
 36
 However, if we assume for purposes of analysis that paragraph 26 had been deleted from the complaint, an entirely different outcome results. Paragraph 25 ("Defendants' [sic] terminated Plaintiff [sic] employment as a result of her assertion of a work-related medical condition") is not preempted, because, in order to adjudicate this claim, the court need only look to the facts of the situation and need not interpret the CBA. See Lingle, 486 U.S. at 407 (common law tort claim for retaliatory discharge not preempted); Smolarek, 879 F.2d at 1331 (workers' compensation discrimination/retaliatory discharge claim under Michigan statute not preempted); cf. Baldracchi v. Pratt & Whitney Aircraft Div., United Technologies Corp., 814 F.2d 102 (2d Cir.1987) (allegation that defendant violated Connecticut statute by terminating plaintiff for filing a workers' compensation claim held not preempted), cert. denied, 486 U.S. 1054 (1988).
 
 
 37
 Paragraph 27 alleges that "Defendants discriminated against Plaintiff by failing or refusing to offer her work within her restrictions, whereas other persons without a work-related condition were accommodated at the plant." Roberts's legal theory here is one of discrimination, and paragraph 27 would require the court to consider only factual issues--how Mazda treated employees who asserted work-related injuries compared to how it treated those with non-work-related injuries. It would not require interpretation of the CBA and thus would not be preempted. Since neither paragraph 25 nor 27 requires preemption, count I would not be preempted in the absence of paragraph 26.
 
 
 38
 Therefore, whether Roberts's claim is preempted depends entirely upon whether paragraph 26 is present in or absent from the complaint. We turn now to consideration of the district court's refusal to permit Roberts to delete paragraph 26 or amend her complaint.
 
 
 39
 B. Legal Standards for Permitting Amendment of Pleadings
 
 
 40
 The question of whether a party should be allowed to amend a pleading is left to the discretion of the district court and the district court may only be reversed if it abused its discretion. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-31 (1971); United States v. Wood, 877 F.2d 453, 456 (6th Cir.1989).
 
 
 41
 Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading should be "freely given when justice so requires."
 
 
 42
 If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be "freely given."
 
 
 43
 Forman v. Davis, 371 U.S. 178, 182 (1962). " '[D]elay alone, regardless of its length is not enough to bar [amendment] if the other party is not prejudiced.' " Moore v. City of Paducah, 790 F.2d 557, 560 (6th Cir.1986) (quoting 3 James W. Moore, Federal Practice p 15.08 at 15.76). And, if the court can impose conditions upon leave to amend in order to mitigate the prejudice to the non-moving party, it could be an abuse of discretion to deny the motion outright. See 6 Charles A. Wright, et al., Federal Practice and Procedure § 1486 at 605-06 (1990) ("If the party opposing amendment can be protected by the use of conditions from any possible prejudice that might result from the untimeliness of the amendment, there is no justifiable reason for not allowing it").
 
 
 44
 C. Analysis of the District Court's Rationale
 
 1. Motion to delete
 
 45
 We first address Roberts's motion to delete paragraph 26.[12] Although the district court did not discuss why it denied Roberts's motion to delete, several reasons for the denial can be gleaned from the district court's decisions: undue delay, prejudice to Mazda, dilatory motive, and futility of amendment.
 
 
 46
 For the reasons stated in our discussion of the preemption issue above, we find that the district court's belief that deleting paragraph 26 would be futile was erroneous. The district court's remaining reasons were contained in its rulings on the later motions to amend, and we consider those reasons as they would apply to the motion to delete.
 
 
 47
 The primary reason for denying the August 21 motion to amend was that the court found Roberts had "a dilatory motive to remove all vestiges of a federal question from the complaint." Secondary reasons were undue delay and prejudice to Mazda "because [permitting amendment] would require further discovery and incur additional expense."
 
 
 48
 We hold that none of these reasons suffices to justify the denial of the motion to delete. First, while Roberts unquestionably wanted to be in state court rather than federal court, the mere fact that she attempted to clarify her state law claim by moving to delete paragraph 26 after she became aware of the preemption problem is not cause to find that she acted improperly.[13] At oral argument, counsel for Mazda cited Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343 (1988), for the proposition that courts should guard against plaintiffs' deleting federal claims so they can get back into state court. Cohill does not so hold; on the contrary, Cohill held that "a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate." Cohill, 484 U.S. at 357. While acknowledging that forum manipulation concerns were legitimate, the Court specifically rejected Carnegie-Mellon's argument that "giving district courts discretion to remand cases involving pendent state-law claims [would] allow plaintiffs to secure a state forum through the use of manipulative tactics." Id. The Court stated that an attempt to manipulate the forum was simply one factor to be considered in the district court's decision whether to retain or remand a pendent state-law claim after dismissal of the basis for federal jurisdiction. Id.
 
 
 49
 Obviously, Roberts would have been wiser to plead so that her case could not have been removed in the first place. But, even if she attempted to amend solely to avoid federal question jurisdiction, the district court's remedy is not to prohibit amendment, but to retain jurisdiction of the state law claim after amendment.[14] We do not believe that federal jurisdiction is a quicksand in which, plaintiff having haplessly wandered in, she remains trapped because of the district court's refusal to permit escape. Likewise, we do not believe that such a plaintiff who appears to be pursuing a particular cause of action is precluded from modifying her pleadings so as to express a different cause of action, if the new theory fits with the facts of her case.[15]
 
 
 50
 Second, delay and prejudice to defendant were at a minimum in this case. Permitting Roberts to change her complaint by deleting a paragraph is quite different from permitting a plaintiff to add a claim which raises new theories or alleges new facts, which necessitates further discovery. Permitting deletion in this case would conceivably cause a slight delay and prompt a new round of summary judgment motions. This minimal effect cannot justify the district court's refusal to permit the deletion in light of Rule 15(a), which requires that leave to amend be "freely given."
 
 
 51
 Although one might believe that for efficiency's sake we should affirm the summary judgment entered in Mazda's favor based on the unlikelihood that Roberts will ultimately prevail in this case, we do not find that such an approach would be proper when the remaining state law claim is at least legally cognizable. Of the two primary paragraphs that remain in count I (paragraphs 25 and 27), paragraph 25 may state a cause of action under Michigan law. Mich.Comp.Laws Ann. § 418.301(11) (1991) (Mich.Stat.Ann. § 17.237(301)(11)) provides:
 
 
 52
 A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act.
 
 
 53
 If Roberts can show that she was terminated because she filed a workers' compensation claim as it appears that paragraph 25 alleges, she can state a claim under this statute.
 
 
 54
 Accordingly, we find that the district court abused its discretion in refusing to permit the deletion of paragraph 26.
 
 2. First motion to amend
 
 55
 With regard to the August 21 motion to amend, we affirm the denial of that motion on other grounds. The district court has no duty to permit amendments which would fail to state a claim and thus be futile. We find that permitting Roberts to add the language she requested, "Defendant discriminated against Plaintiff by harassing her, giving her job assignments in violation of her restrictions after reporting her work-related injuries," would be futile because the new language does not state a valid claim under section 418.301.
 
 
 56
 With this new language, Robert alleged that she was discriminated against for her assertion of a work related injury. The problem here is that the alleged harassment and the giving of work in violation of her medical restrictions occurred before she filed a workers' compensation claim. Section 418.301(11) does not recognize a cause of action for discrimination that occurs prior to the filing of a workers' compensation claim. See Griffey v. Prestige Stamping, Inc., 473 N.W.2d 790 (Mich.App.1991); Ashworth v. Jefferson Screw Prods., Inc., 440 N.W.2d 101 (Mich.App.1989), leave denied, 433 Mich. 873 (1989); Wilson v. Acacia Park Cemetery Ass'n, 413 N.W.2d 79 (Mich.App.1987). Because this first motion to amend would have added an allegation that did not state a claim, we affirm the district court's denial of it.
 
 3. Second motion to amend
 
 57
 The November 25 motion to amend sought to add a new claim arising out of a new occurrence, i.e., the allegedly improper notice of termination. Delay would be significant with this amendment because of the new allegation it made. Further discovery would have to be conducted. And, it appears that adding this particular claim would be futile because the notice requirements are either spelled out in the CBA, in which case the claim is probably preempted, or are non-existent, in which case the claim is likely meritless. Because of these facts, we cannot say that the district court abused its discretion, and we affirm the denial of the second motion to amend.
 
 D. Other Issues
 
 58
 We address only briefly the district court's summary judgment on counts II and III. Roberts does not contest the dismissal of count III, and finding solid ground for the dismissal, we affirm the district court's ruling on that issue. We also affirm the dismissal of count II because Roberts only feebly contests its dismissal, and we find sufficient grounds for affirmance.[16]
 
 III
 
 59
 For the foregoing reasons, we AFFIRM the district court's dismissal of counts II and III, the denial of the August 21 motion to amend, and the denial of the November 25 motion to amend. We REVERSE the denial of Roberts's motion to delete paragraph 26 and the summary judgment entered on count I of the complaint, and we REMAND for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable John M. Manos, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Mazda Motor Manufacturing has been renamed AutoAlliance International, Inc. Because Roberts was employed by Mazda, we refer to the defendant as Mazda instead of AutoAlliance
 
 
 [2]
 Roberts was reinstated despite the fact that she did not precisely fit the terms of the union-Mazda deal
 
 
 [3]
 The union and Mazda had entered into a new three-year CBA before the expiration of the old CBA, and this had the effect of extending Roberts's "inactive" status until this termination occurred in November 1991
 
 
 [4]
 Roberts asked the court to "dismiss paragraph 26 of Count I." For clarity, we refer to this particular motion as the "motion to delete."
 
 
 [5]
 Roberts claimed that the termination letter sent November 8, 1991 did not provide sufficient warning that her failure to return to work within five working days of the termination of her long-term disability benefits (on November 1, 1991) would result in her termination
 
 
 [6]
 Apparently, the court felt that either its discussion of the summary judgment granted on count I or its ruling on the two separate motions to amend was a sufficient basis to deny the motion to delete. We address this issue infra
 
 
 [7]
 We also review the district court's order of July 11 (which held that count I was preempted by LMRA § 301) despite the fact that it was not specifically mentioned in the notice of appeal. We do this because the July 11 order was an integral part of the district court's ultimate summary disposition of the case
 
 
 [8]
 The district court's mention of this fact is found in the July 1991 ruling which was essentially the first of two parts in the summary judgment ruling
 
 
 [9]
 We note, however, that this point was not the primary basis of the district court's ruling
 
 
 [10]
 We also note that matters which can be "admitted" by a party are generally limited to matters of fact and some mixed questions of fact and law. See 8 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2255 (1970). It cannot seriously be contended that a party's understanding of a legal matter could constitute a binding admission. It is for the court in all instances to decide what law applies to a particular case
 
 
 [11]
 For a discussion of the history and development of § 301 preemption, see International Bhd. of Elec. Workers v. Hechler, 481 U.S. 851, 855-859 (1987)
 
 
 [12]
 We note that Roberts's approach here should be discouraged: burying in a response brief a motion to dismiss a paragraph from one's complaint is hardly a commendable practice. The motion not only might be missed completely, but also fails to give the district court a focused legal and factual basis upon which to consider it
 
 
 [13]
 See, e.g., Minor v. Northville Pub. Sch., 605 F.Supp. 1185, 1201 (E.D.Mich.1985) ("[F]iling a motion for leave to amend after prompting by opposing counsel's motion for dismissal is not bad faith as intimated by the defendant here.") (citing Hildebrand v. Honeywell, Inc., 622 F.2d 179 (5th Cir.1980)); Adams v. Beland Realty Corp., 187 F.Supp. 680 (E.D.N.Y.1960) (after removal based on diversity, plaintiff's motion to substitute for corporate defendant defendant's successor partnership, a non-diverse party, held proper because no prejudice shown; case then remanded to state court for lack of jurisdiction)
 
 
 [14]
 It is settled law that the district court may exercise jurisdiction over a pendent state law claim, even after the basis for removal to federal court has been eliminated, if recommended by a careful consideration of factors such as judicial economy, convenience, fairness, and comity. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343 (1988); United Mine Workers v. Gibbs, 383 U.S. 715 (1966)
 
 
 [15]
 We reiterate, however, that we do not approve of Roberts's counsel's approach in this case. On the contrary, the poor drafting of the complaint in this case caused the problem in the first place, and many months passed before any attempt was made to correct patent problems with the complaint. But, we are bound to follow the applicable principles of law, even if doing so creates the appearance that we approve of counsel's handling of the matter
 
 
 [16]
 We also note that at the district court Roberts had consented to the dismissal of count II if count I survived Mazda's preemption argument. Since we reverse the district court's summary judgment on count I because that count is not preempted, we find that Roberts has no bona fide objection to our affirmance of the dismissal of count II